HERBERT C. HALLAS ET AL. *v.* TOWN
OF WINDSOR ET AL.
(13567)

PETERS, C. J., CALLAHAN, GLASS, HULL and SANTANIELLO, Js.

Argued May 5—decision released August 1, 1989

---

*Mary Katz Moule,* with whom were *Herbert C. Hallas* and, on the brief, *Christopher C. Noble,* for the appellants (plaintiffs).

*Francis H. Morrison III,* with whom were *Judith A. Blank* and, on the brief, *Susan J. Barnes,* for the appellees (named defendant et al.).

*Ralph G. Elliot,* for the appellee (defendant Albert G. Ilg).

*Thomas F. Parker,* for the appellee (defendant Ruth Levine).

HULL, J. This appeal arises from an action brought by the plaintiffs, Herbert Hallas and Mary Katz Moule, against the defendants, the town of Windsor, Windsor town manager Albert G. Ilg, Windsor director of finance Antoinette J. Anderson, and former Windsor director of finance Ruth Levine,[1] alleging that appropriations made by the Windsor town council to fund two road construction projects in the town were in violation of the town charter.[2] Specifically, the plaintiffs

---

[1] The defendant Albert G. Ilg was sued both individually and in his official capacity. The defendant Antoinette J. Anderson was sued in her official capacity only, having been substituted for her predecessor Ruth Levine. The defendant Ruth Levine was sued individually only.

[2] The members of the Windsor town council were originally named as defendants both individually and in their official capacities. On January 5,

claimed that the town charter required the approving vote of the town meeting[3] to validate the appropriations in question, and that the town council, acting alone, was without authority to make the appropriations. In their claims for relief, the plaintiffs sought monetary damages and injunctive relief. The defendants, by way of counterclaim, sought a declaratory judgment that the appropriations were made in compliance with all relevant provisions of the town charter and hence were lawful and valid. Subsequently, the plaintiffs moved for summary judgment on counts one and two of their amended complaint,[4] and the defendants filed a cross motion for summary judgment on their counterclaim.

By memorandum of decision filed August 18, 1988, the trial court concluded that, under the pertinent provisions of the town charter, the town council was authorized to make the appropriations for the two road construction projects without the approving vote of the town meeting. Alternatively, the trial court ruled that even if the plaintiffs were correct that a town meeting was required to validate the road construction appropriations made by the town council, the plaintiffs' claims of illegality were rendered moot by a subsequent special town meeting that purported to ratify the appropriations in question. Accordingly, the trial court: (1) denied the plaintiffs' motion for summary judgment

1984, the trial court, *O'Neill, J.*, granted the motions of the town council members to strike the complaint as to them on the ground of legislative immunity.

[3] Those eligible to vote at a town meeting are "any person who is an elector of such town . . . and any citizen of the age of eighteen years or more who, jointly or severally, is liable to the town . . . for taxes assessed against him on an assessment of not less than one thousand dollars on the last-completed grand list" of such town. General Statutes § 7-6.

[4] The first count of the plaintiffs' amended complaint alleged illegality with respect to an appropriation made by the town council for the construction of a road known as Corporate Drive; the second count made similar allegations with respect to a road known as Griffin Road North Extension.

on counts one and two of their amended complaint; (2) granted the defendants' cross motion for summary judgment on their counterclaim; and (3) rendered a declaratory judgment in favor of the defendants that the Windsor town charter did not require the approving vote of the town meeting to validate the appropriations at issue. We agree with the trial court's alternate ruling that the claims raised by the plaintiffs in their appeal have been rendered moot and, therefore, we lack jurisdiction to rule upon them.

The factual background of this appeal is not in dispute. Pursuant to chapter 9 of the Windsor town charter, the town meeting convenes in May of each year to adopt a budget for the town for the ensuing fiscal year, which runs from July 1 through June 30. The annual budget upon which the town meeting acts is recommended and presented to it by the town council—the town's legislative body that also acts in the capacity of the board of finance. See Windsor Town Charter, c. 8, § 8-3 and c. 3, §§ 3-5, 3-6, 3-7. In adopting the annual budget, the town meeting makes appropriations for all purposes authorized by law. See General Statutes § 7-121.

Pursuant to chapter 8, § 8-7 (e) of the town charter, once the fiscal year begins, additional appropriations over and above those contained in the annual budget may be made from time to time by resolution of the town council upon recommendation of the town manager and upon certification from the finance director that there is available an unappropriated and unencumbered general fund cash balance to meet such appropriations.[5] Thus, under § 8-7 (e), if an available cash

---

[5] Chapter 8, § 8-7 (e) of the Windsor town charter provides: "The several departments, commissions, boards and offices of the town shall not involve the town in any obligation to spend money for any purpose in excess of the amount appropriated therefor until the matter has been approved and voted by the town council and each order drawn upon the treasurer

balance exists, the town council may make appropriations without the approving vote of the town meeting. Section 8-7 (e) states, however, that its provisions "shall be subject to the provisions of [chapter 9,] section 9-3 of this act." Section 9-3 provides in pertinent part: "[A]ny appropriation in excess of (1) per cent of the tax levy in the fiscal year for which the appropriation is made in addition to or supplementary to the annual budget appropriation, the issuance of bonds or notes in excess of (2) per cent of the tax levy for the fiscal year in which the borrowing is made . . . shall become effective only after it has been adopted at a town meeting by the vote of a majority of those present and entitled to vote at such meeting . . . ."

The central issue below was whether the defendants had violated § 9-3 of the town charter when the town council made appropriations to fund the two road construction projects, known as "Griffin Road North Extension" and "Corporate Drive," without the approving vote of the town meeting. With regard to that issue, the parties agreed in open court to the following salient facts. The first appropriation, for the construction of Griffin Road North Extension, was for $340,000. This appropriation was made by the town

shall state the department, commission, board or officers or the appropriation against which it is to be charged. When any department, commission, board or officer shall desire to secure a transfer of funds in its or his appropriation from funds set apart for one specific purpose to another, before incurring any expenditure thereof, such department, commission, board or officer shall make application to the council whose duty it shall be to examine into the matter, and upon approval of the council such transfer may be made, but not otherwise. Additional appropriations over and above those contained in the total budget may be made from time to time by resolution of the council, upon recommendation of the town manager and upon certification from the finance director that there is available an unappropriated and unencumbered general fund cash balance to meet such appropriations, except that the recommendation of the town manager shall not be required for such appropriations to the board of education and provided these provisions shall be subject to the provisions of section 9-3 of this act."

council alone, the vote occurring on July 20, 1982. The second appropriation, for the construction of Corporate Drive, was for $200,000. This appropriation was also made by the town council alone, the vote occurring on January 18, 1983. The two appropriations were to be funded by bonds or notes, as opposed to cash. Each appropriation was between 1 percent and 2 percent of the tax levy for fiscal year 1982-83. Construction of both roads began in the summer of 1983. Corporate Drive was completed in May, 1984. Griffin Road North Extension was completed in November, 1984.

The plaintiffs argued to the trial court that under §§ 8-7 (e) and 9-3 of the town charter, the town council's authority to make additional or supplementary appropriations without the approving vote of the town meeting was limited to appropriations of 1 percent or less of the tax levy that were to be funded by an available unencumbered general fund cash balance. Thus, under the plaintiffs' interpretation of §§ 8-7 (e) and 9-3, the appropriations at issue were illegal in two respects: first, each appropriation was in excess of 1 percent of the tax levy; and second, both appropriations were to be funded by the issuance of debt rather than by an available unencumbered general fund cash balance. The trial court, however, disagreed with the plaintiffs' interpretation. The court concluded that §§ 8-7 (e) and 9-3 authorized the town council to make appropriations of 2 percent or less of the tax levy without the approving vote of the town meeting where such appropriations were to be funded by the issuance of debt, i.e., through the issuance of bonds or notes. Therefore, under the court's interpretation of the relevant charter provisions, the appropriations at issue were validly made by the town council.

Alternatively, the court ruled that even if the plaintiffs were correct that §§ 8-7 (e) and 9-3 prohibited the town council from making the two road construction

appropriations without the approving vote of the town meeting, the plaintiffs' claims of illegality were rendered moot by a subsequent special town meeting that purportedly ratified the appropriations. The undisputed facts relevant to this issue are as follows.

On October 29, 1984, the town council held a special meeting. The minutes of this meeting read in pertinent part as follows: "Appropriation of $468,000 in the General Fund to Fund Griffin Road North Extension and Corporate Drive Borrowings

Deputy Waters read and moved the following resolution:

RESOLVED: To approve the transfer of $468,000 from Unappropriated General Fund Balance to General Fund Account No. 272 (Debt Service-Principal).

Councilwoman Simmons seconded, and the motion passed 8-0-0.

Set a Town Meeting Date to Approve the Appropriation of $468,000 for Griffin Road North Extension and Corporate Drive

Councilwoman Turley read and moved the following resolution:

RESOLVED: That the resolution to approve the transfer of $468,000 from Unappropriated General Fund Balance to General Fund Account No. 272 (Debt Service-Principal) shall be submitted to the legal voters of the Town of Windsor for approval or disapproval at a Special Town Meeting to be held at the Windsor Town Hall on Monday, November 5, 1984, at 7:00 o'clock P.M. (E.S.T.) with the recommendation of the Town Council tht [sic] such resolution be approved.

Councilman Christensen seconded, and the motion passed 8-0-0."

Notice of the special town meeting to be held on November 5, 1984, was published in the October 31, 1984 *Journal Inquirer,* a newspaper having a circulation in the town of Windsor. The notice read as follows:

## "TOWN OF WINDSOR
## NOTICE OF SPECIAL TOWN MEETING

The legal voters of the Town of Windsor are hereby warned that a Special Town Meeting will be held at the Windsor Town Hall on November 5, 1984 at 7:00 P.M. (E.S.T.) for the following purpose:

To approve or disapprove the resolution to approve the transfer of $468,000 from Unappropriated General Fund Balance to General Fund Account No. 272 (Debt Service-Principal) adopted at the meeting of the Town Council held October 29, 1984.

Dated October 30, 1984."

The special town meeting referred to above was in fact held on November 5, 1984. The minutes of that meeting read as follows:

"A special town meeting of the Town of Windsor was held in the Council Chambers on November 5, 1984 at 7:00 o'clock P.M. The meeting was called to order at 7:00 P.M. by the Clerk and recessed until 7:15 P.M.

Mr. Francis Brady was duly elected moderator.

The call was read by the Clerk.

The Moderator stated the rules and procedures for the meeting and those qualified to vote at the special meeting.

Mr. Everett Dowe, Jr. moved the following resolution:

To approve or disapprove the resolution to approve the transfer of $468,000 from Unappropriated General Fund Balance to General Fund Account No. 272 (Debt Service-Principal) adopted at the meeting of the Town Council held October 29, 1984 to be adopted.

Mr. James Grant seconded the resolution.

After a short discussion Mr. James McManus called for the question. The call for the question carried a 2/3d vote.

The vote was taken by a paper ballot vote. The tellers were sworn in by the Clerk.

The Registrar of Voters declared that 188 voters were crossed off the registry list.

On the vote, the resolution carried

YES   NO
157   34

Having no further business, the meeting was adjourned at 9:05 P.M."

The trial court ruled that "[t]he November 5, 1984 [special] town meeting vote served to ratify the previous action of the [town council]" and thereby rendered moot the plaintiffs' claims of illegality.[6] Accordingly, the trial court denied the plaintiffs' motion for summary judgment on counts one and two of their amended

---

[6] In further support of its conclusion that the plaintiffs' case was moot, the trial court noted that the two roads had been completed and the debt for them paid off, and that this effectively precluded the court from granting the plaintiffs any practical relief in the form of an injunction. Moreover, because the plaintiffs had failed to claim that the town did not get what it bargained for, the trial court concluded that the plaintiffs were not entitled to monetary damages. In view of our holding, infra, that this case is rendered moot for lack of an existing controversy between the parties, it is unnecessary for us to address the question of whether this case is rendered moot on the separate ground that there was no practical relief available that the court could grant to the plaintiffs.

complaint, granted the defendants' cross motion for summary judgment on their counterclaim, and rendered a declaratory judgment in favor of the defendants. From this decision the plaintiffs have appealed.

We agree with the trial court's alternate ruling that the plaintiffs' claims on this appeal have been rendered moot. Consequently, this court lacks jurisdiction to entertain this appeal on the merits. "Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute: 'Courts exist for determination of actual and existing controversies, and under the law of this state the courts may not be used as a vehicle to obtain judicial opinions on points of law.' *Harkins* v. *Driscoll,* 165 Conn. 407, 409, 334 A.2d 901 (1973) . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Citations omitted.) *State* v. *Nardini,* 187 Conn. 109, 111–12, 445 A.2d 304 (1982). " 'In the absence of an actual and existing controversy for us to adjudicate in any sense of the term, the courts of this state may not be used as a vehicle to obtain judicial opinions upon points of law . . . and where the question presented is purely academic, we must refuse to entertain the appeal.' " (Citation omitted.) *Shays* v. *Local Grievance Committee,* 197 Conn. 566, 571–72, 499 A.2d 1158 (1985), quoting *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union,* 177 Conn. 17, 19, 411 A.2d 1 (1979). Furthermore, "[t]he law recognizes that the actions of parties themselves, by settling their differences, can cause a case to become moot. . . . 'A case becomes moot when due to intervening circumstances

a controversy between the parties no longer exists.' " *Waterbury Hospital* v. *Connecticut Health Care Associates,* 186 Conn. 247, 251–52, 440 A.2d 310 (1982), quoting *Cote* v. *Zoning Board of Appeals,* 398 A.2d 419, 420 (Me. 1979).

The heart of the plaintiffs' claim is that the two road construction appropriations made by the town council were invalid under the relevant town charter provisions because they lacked the approving vote of the town meeting. The law is clear, however, that "[a] debt invalid for any reason when entered into, may be ratified, in a proper case, by a subsequent vote of the people. And where a previous appropriation is necessary but is not made, the contract may be ratified by a subsequent appropriation." 15 E. McQuillin, Municipal Corporations (3d Ed.) § 39.37, and cases cited therein. Thus, even if the plaintiffs were correct that the town charter required the approving vote of the town meeting to validate the appropriations in question, that alleged defect was remedied by the special town meeting held on November 5, 1984, where the people present voted overwhelmingly to approve the appropriation of $468,000 in the general fund to pay for the construction of Corporate Drive and Griffin Road North Extension. That is precisely the vote the plaintiffs allege should have been taken. Therefore, any actual controversy regarding the lack of a town meeting vote that may have once existed between the parties, ceased to exist after the November 5, 1984 special town meeting where the people present voted to approve appropriations for the construction of the two roads. It is this present lack of an actual controversy between the parties that renders the plaintiffs' appeal moot, thereby denying this court jurisdiction. See, e.g., *Shays* v. *Local Grievance Committee,* supra; *State* v. *Nardini,* supra; *Waterbury Hospital* v. *Connecticut Health Care*

*Associates,* supra; *Harkins* v. *Driscoll,* supra; *Reynolds* v. *Vroom,* 130 Conn. 512, 515, 36 A.2d 22 (1944).

Although the plaintiffs acknowledge the doctrine of subsequent ratification noted above, they contend that no appropriations for road construction were ratified at the special town meeting held on November 5, 1984. The plaintiffs maintain that the townspeople at that meeting merely authorized a "transfer" of monies from the general fund balance to general fund account No. 272 (debt service-principal), not an "appropriation" for the construction of Corporate Drive and Griffin Road North Extension. The plaintiffs contend that this alleged failure to ratify an actual "appropriation" for the road construction projects at the special town meeting mandates the conclusion that funding for those projects was not approved by the special town meeting, and that an actual controversy between the parties therefore still exists. We disagree.

On October 29, 1984, the town council held a meeting wherein it voted to approve a resolution entitled "Appropriation of $468,000 in the General Fund to Fund Griffin Road North Extension and Corporate Drive Borrowings." At this same meeting, the town council also voted to approve another resolution entitled "Set a Town Meeting Date to Approve the Appropriation of $468,000 for Griffin Road North Extension and Corporate Drive." It was pursuant to this second resolution that the November 5, 1984 special meeting was called. The resolution ultimately submitted for approval at the special town meeting reads as follows: "To approve or disapprove the resolution to approve the transfer of $468,000 from Unappropriated General Fund Balance to General Fund Account No. 272 (Debt Service-Principal) adopted at the meeting of the Town Council held October 29, 1984 to be adopted." This resolution was approved by a vote of 157 to 34 at the special town meeting.

Thus, the only question is whether this town meeting vote constituted the ratification of an "appropriation." In *Woodward* v. *Reynolds,* 58 Conn. 486 (1890), we held that a town meeting vote that accepted a General Assembly bond resolution and then directed town officials to " 'prepare . . . suitable . . . bonds' " and to " 'dispose of them' " constituted an appropriation even though the word "appropriation" was never used: "Construing the votes in light of [the] language of the resolution, we think they clearly make an appropriation . . . . To construe them otherwise would, we think, defeat the manifest intent and purpose of the town in passing them." Id., 491. Similarly, the language of the resolution at issue in this case, together with the events leading up to its passage, convince us that the townspeople were on notice that the "manifest intent and purpose" of the November 5, 1984 special town meeting was to approve or disapprove an appropriation for the construction of Corporate Drive and Griffin Road North Extension, and that the vote in favor of the resolution "clearly [made] an appropriation." Id.

In summation, in view of the subsequent ratification by the townspeople of appropriations made previously by the town council for the construction of Corporate Drive and Griffin Road North Extension, no actual controversy still exists between the parties and the case is therefore moot. Accordingly, we conclude that the trial court acted correctly in denying the plaintiffs' motion for summary judgment on counts one and two of their amended complaint and in granting the defendants' cross motion for summary judgment on their counterclaim.[7]

---

[7] In view of our holding that this case is moot, we hereby vacate the declaratory judgment rendered by the trial court in favor of the defendants that the town charter did not require the approving vote of the town meeting to validate the appropriations at issue, as the trial court was without jurisdiction to hear or decide that matter.

There is no error and the matter is remanded with direction to vacate the declaratory judgment in favor of the defendants.[8]

In this opinion the other justices concurred.

[8] The plaintiffs devote less than one paragraph of their thirty-five page brief to the "capable of repetition, yet evading review" exception to the mootness doctrine. We have duly considered this exception, succinctly described in *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union,* 177 Conn. 17, 20–21, 411 A.2d 1 (1979), and find it inapplicable to this case.