## AMERICAN PREMIER UNDERWRITERS, INC. *v.* NATIONAL RAILROAD PASSENGER CORPORATION ET AL.
### (AC 16247)

Landau, Schaller and Hennessy, Js.

Argued October 31—officially released December 30, 1997

*James T. Shearin,* with whom, on the brief, was *Andrew J. McDonald,* for the appellant (plaintiff).

*Charles A. Deluca,* with whom, on the brief, was *Joseph P. Sargent,* for the appellees (named defendant et al.).

*John B. Hughes,* assistant United States attorney, for the appellee (defendant United States Department of Transportation).

*Opinion*

LANDAU, J. The plaintiff, American Premier Underwriters, Inc., appeals from the judgment following the trial court's granting of the motions filed by the defendant National Railroad Passenger Corporation (Amtrak) and the defendant United States of America Department of Transportation (United States)[1] to dismiss the five count complaint.[2] On appeal, the plaintiff argues that the trial court improperly dismissed the first four counts of the complaint for lack of subject matter jurisdiction on the ground that a special federal court had exclusive jurisdiction, and the fifth count of the complaint because the claim was not ripe.[3] We affirm the judgment of the trial court because we agree with the trial court's ultimate decision to dismiss the plaintiff's claims; however, we disagree with the court's reasoning in support of that result.

The following facts are necessary for the resolution of this appeal. The dispute among the parties began in the early 1970s, when several large railroad companies in the northeastern United States, including Penn Central Transportation Company (Penn Central), filed for bankruptcy protection. Congress responded to the

---

[1] There are numerous defendants in this case, many of whom were defaulted for failure to appear. The two defendants pertinent to this appeal, Amtrak and the United States, moved to dismiss counts one through four of the complaint on the ground that a special federal court had exclusive jurisdiction over those claims. Amtrak and the United States also moved to dismiss count five because it was not ripe for adjudication. We refer in this opinion to Amtrak and the United States as the defendants.

[2] Count one of the operative complaint sounded in an action to quiet and settle title, count two requested a declaratory judgment, count three requested a constructive trust be imposed, count four asked for a declaration that the plaintiff had fee title to or an equitable interest in the property and count five requested an accounting.

[3] The plaintiff also argues that his motion for a stay of proceedings, filed May 8, 1996, should have been granted. The trial court never acted on the application because it dismissed the case.

transportation crisis by enacting the Regional Rail Reorganization Act of 1973 (act).[4] The act created the United States Railway Association and charged it with preparing a plan to restructure rail service in the northeastern region of the United States.[5] The national restructuring plan that emerged from this process is known as the Final System Plan.[6] Among other things, the Final System Plan required the transfer of certain rail properties then owned by Penn Central to the newly created Consolidated Rail Corporation (Conrail) and to Amtrak.

The act created the "Special Court" to implement the conveyancing process by issuing orders approving the transfer of deeds pursuant to the Final System Plan.[7] Pursuant to that plan, on March 30, 1976, the trustees of the property of Penn Central conveyed rights in the real property at issue in this case to Conrail, and on April 1, 1976, Conrail conveyed its rights in the property to Amtrak (1976 deeds). The plaintiff, asserting that it is the successor in interest to Penn Central, claims that the order of the Special Court and the 1976 deeds vested it with a fee simple interest in the property located in Greenwich. Amtrak denies that the plaintiff is the owner of the property and maintains that the effect of the 1976 deeds was to vest it, not the plaintiff, with ownership.

In May, 1996, the plaintiff filed its five count amended complaint in the trial court. See footnote 2. The plaintiff also commenced an action in the Special Court seeking a determination by that tribunal of the meaning and effect of the 1976 deeds. It sought a judgment declaring that the 1976 deeds conveyed only operating rights, if

---

[4] 45 U.S.C. §§ 701 through 797m.

[5] 45 U.S.C. §§ 711 through 729.

[6] 45 U.S.C. §§ 716 through 717.

[7] See 45 U.S.C. § 719. The Special Court was abolished on January 19, 1997, and its powers transferred to the United States District Court for the District of Columbia. See Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 605, 110 Stat. 3847, 3858 (1996).

any, to Conrail and Amtrak and that it retained a fee simple interest in the property. The defendants moved to dismiss the action in the trial court, arguing that the court lacked subject matter jurisdiction because the Special Court had original and exclusive jurisdiction of the first four counts of the complaint and the fifth count was not ripe for adjudication. On the same day that the defendants filed the motions to dismiss, the plaintiff moved to stay the action in the trial court pending the Special Court's resolution regarding ownership of the property at issue. The trial court granted the defendants' motions to dismiss, and, as a result, did not act on the plaintiff's motion to stay.[8]

It is beyond dispute that each count of the plaintiff's five count complaint relied on the threshold determination of the effect of the 1976 deeds. The plaintiff, in its brief, concedes that "[t]he Special Court . . . unquestionably has exclusive jurisdiction over the narrow but important issue of interpreting [the 1976 deeds]." In addition, the plaintiff states that "*[if]* the Special Court decides, as [the plaintiff] believes is correct, *that no fee simple interest was conveyed, then* the Superior Court . . . must grapple with the state [law] issues raised as a result of plaintiff's amended [five count] complaint . . . ." (Emphasis added.) Moreover, the plaintiff stated in its memorandum of law in support

---

[8] Although the judgment file indicates that the trial court granted only Amtrak's motion to dismiss, it is apparent from the trial court's articulation that it also granted the United States' motion to dismiss. The trial court, in its articulation, expressly concurred with the United States' reasoning in dismissing the plaintiff's complaint. As a result, the trial court impliedly granted both Amtrak's and the United States' motions to dismiss. See *Lashgari* v. *Lashgari*, 197 Conn. 189, 196–97, 496 A.2d 491 (1985).

We further note that we do not condone the trial court's verbatim adoption, in its articulation, of the reasoning of the United States in its motion to dismiss as the basis for its dismissal of the plaintiff's complaint. See *Doe* v. *Bridgeport Hospital*, 40 Conn. App. 429, 432–33, 671 A.2d 405 (1996) (recognizing inadequacy of trial court's adoption of party's legal or factual conclusions as basis for court's decision).

of its motion to stay the proceedings that, "*[i]f* the Special Court determines that [the plaintiff] is the fee owner of the properties at issue, other [state] issues arise that do not concern the Special Court. . . . There are, therefore, a number of state-law issues that would need to be resolved *after* the resolution of the issue over which the Special Court has exclusive jurisdiction." (Emphasis added.)

As a result, we are not presented with the issue of concurrent jurisdiction versus exclusive jurisdiction. It is conceded by all parties that the trial court may not decide the issues presented by the complaint until the Special Court rules on the issue concerning the 1976 deeds. Consequently, the plaintiff's claims were not ripe and, therefore, not justiciable.[9]

"Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute: Courts exist for determination of actual and existing controversies, and under the law of this state the courts may not be used as a vehicle to obtain judicial opinions on points of law. *Harkins* v. *Driscoll*, 165 Conn. 407, 409, 334 A.2d 901 (1973) . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . *State* v. *Nardini*, 187 Conn. 109, 111–12, 445 A.2d 304 (1982)."

---

[9] Subsequent to the filing of this appeal, the Special Court ruled on the plaintiff's action, which sought a determination by that tribunal of the meaning and effect of the 1976 deeds. The order and memorandum of decision, filed November 6, 1997, contained the following information: the Special Court denied the plaintiff's motion for summary judgment, granted the defendant Amtrak's motion for summary judgment, and rendered judgment on the merits in favor of all defendants against the plaintiff.

(Internal quotation marks omitted.) *Hallas* v. *Windsor*, 212 Conn. 338, 347, 562 A.2d 499 (1989). "Courts are established to decide actual controversies and an appellate court has no jurisdiction to adjudicate cases that are not justiciable. *State* v. *Nardini*, supra, 111." *Mayer* v. *Biafore, Florek & O'Neill*, 45 Conn. App. 554, 557, 696 A.2d 1282 (1997).

Here, because the plaintiff's claim as to the 1976 deeds had not been adjudicated and, consequently, no determination had been made as to the plaintiff's rights, if any, in the property, no actual controversy existed among the parties in this dispute. An essential element of the causes of action pleaded by the plaintiff in its five count complaint had not been determined and, even the parties agree, could have been determined only by the Special Court. At the time the trial court heard the motion to dismiss, the plaintiff's claim against the defendants had yet to be adjudicated in an action between the plaintiff and the defendants in the Special Court, and, as a result, the claims at issue in the trial court could not have been determined.[10] See footnote 9. The trial court, in effect, issued an opinion regarding its jurisdiction over claims that may never come before it subsequent to a judgment by the Special Court on the threshold and determinative issue.

The plaintiff asserts, however, that, in the interests of comity and judicial economy, the trial court should

---

[10] We note that the consideration of any issues not germane to a determination of the trial court's jurisdiction over the subject matter is not warranted. This includes the consideration, as argued by the plaintiff, of the statute of limitations, estoppel and laches issues. Even if such issues were properly raised, they lack merit. Subject matter jurisdiction may not be conferred in a matter that is not ripe for adjudication merely because the statute of limitations may run before resolution of a claim. Connecticut law has consistently recognized that a statute of repose may on occasion operate to bar an action even before it accrues. See *Zapata* v. *Burns*, 207 Conn. 496, 508–509, 542 A.2d 700 (1988); *Sanborn* v. *Greenwald*, 39 Conn. App. 289, 301–306, 664 A.2d 803, cert. denied, 235 Conn. 925, 666 A.2d 1186 (1995).

have stayed rather than dismissed the action. We disagree. " 'Whenever the absence of jurisdiction is brought to the notice of the court or tribunal, cognizance of it must be taken and the matter passed upon before it can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction.' " *Sivilla* v. *Philips Medical Systems of North America, Inc.*, 46 Conn. App. 699, 703, 700 A.2d 1179 (1997), quoting *Second Injury Fund* v. *Lupachino*, 45 Conn. App. 324, 330, 695 A.2d 1072 (1997). As a result, the trial court was required to address the jurisdictional challenge before ruling on other motions and, once it decided that it lacked subject matter jurisdiction, it was bound and required to dismiss the case. See *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 245–46, 558 A.2d 986 (1989). Accordingly, nothing was left before the trial court on which to act. See *Denton* v. *Danbury*, 48 Conn. 368, 372 (1880). Therefore, the trial court could not properly have addressed the plaintiff's motion for a stay. See *Gurliacci* v. *Mayer*, 218 Conn. 531, 545, 590 A.2d 914 (1991) (error for trial court to consider motion to amend prior to ruling on challenge to court's subject matter jurisdiction).[11]

Because the issue before the Special Court had not been resolved, the "matter in controversy [before the trial court was incapable] of being adjudicated by judicial power" and the motion to dismiss was properly granted. See *Hallas* v. *Windsor*, supra, 212 Conn. 347. We conclude, therefore, that the trial court properly granted the defendants' motions to dismiss due to its lack of subject matter jurisdiction. The basis for the dismissal, however, should have been that all five claims were not ripe, and, therefore, not justiciable.[12]

---

[11] The cases cited in the plaintiff's brief are not pertinent to this issue because each case was heard by the Special Court and each case focuses on the ability of the Special Court to stay proceedings pending resolution of issues in other courts.

[12] Justiciability and ripeness have been referred to as related doctrines. See *Cumberland Farms, Inc.* v. *Groton*, 46 Conn. App. 514, 517–18, 699

The judgment is affirmed.

In this opinion the other judges concurred.

A.2d 310, cert. granted, 243 Conn. 936, 702 A.2d 641 (1997); *Mayer* v. *Biafore, Florek & O'Neill,* supra, 45 Conn. App. 556–57; *ASL Associates* v. *Zoning Commission,* 18 Conn. App. 542, 548–49, 559 A.2d 236 (1989). The courts, however, have left the precise relationship between ripeness and justiciability unanswered. Whether ripeness is a requirement of justiciability or vice versa seems to puzzle both courts and scholars.

In "A Unified Approach to Justiciability," 22 Conn. L. Rev. 677 (1990), Professor Erwin Chemerinsky examines ripeness in the context of the federal courts. He describes ripeness as one of "several justiciability doctrines," including standing, mootness and the political question doctrine, which must be met in order for a federal court to hear a case. Id., 677. " 'Standing is an aspect of justiciability and, as such, the problem of standing is surrounded by the same complexities and vagaries that inhere in justiciability." *Shaskan* v. *Waltham Industries Corp.*, 168 Conn. 43, 48, 357 A.2d 472 (1975), quoting *Flast* v. *Cohen*, 392 U.S. 83, 98, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968). Chemerinsky concludes his study by suggesting that ripeness along with other overlapping doctrines should be merged into one unified analysis. Because we agree that ripeness is a sine qua non of justiciability, we have referred to the doctrines as such.