RAYMOND ESPOSITO, EXECUTOR (ESTATE OF NEIL ESPOSITO) *v.* HEATHER SPECYALSKI ET AL.
(SC 17063)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

Argued February 19—officially released April 6, 2004

*Wesley W. Horton*, with whom were *Robert M. Shields, Jr., Howard A. Jacobs* and, on the brief, *Charles A. Deluca, Kimberly A. Knox, Tricia Morris Porto, Julia K. Ulrich*, legal intern, and *Jeffrey J. White*, legal intern, for the appellants (plaintiff and third party defendant).

*Cesar A. Noble*, with whom, on the brief, was *Thomas J. Sansone*, for the appellee (defendant and third party plaintiff Mercedes-Benz Credit Corporation).

*Opinion*

KATZ, J. This is a joint appeal of the plaintiff and of the third party defendant from the summary judgment rendered in favor of the defendant Mercedes-Benz Credit Corporation (Mercedes-Benz Credit) on both its counterclaim and its third party complaint. Because we determine that the decision of the trial court is not yet ripe for adjudication, we dismiss the appeal.

The record discloses the following undisputed facts. The plaintiff, Raymond Esposito (Esposito), the executor of the estate of Neil Esposito (decedent), commenced this action for damages[1] against the defendants, Heather Specyalski and Mercedes-Benz Credit. Esposito's complaint alleged that the decedent was a passen-

---

[1] This case has been consolidated with *Specyalski* v. *Esposito*, Superior Court, judicial district of New London at Norwich, Docket No. X04-CV-00-0121876-S, in which Specyalski sought to recover damages for personal injuries she had sustained in the same accident, claiming that the decedent was the operator of the motor vehicle at the time of the accident.

ger in a motor vehicle, which was owned by and leased from Mercedes-Benz Credit[2] and negligently operated by Specyalski, that left the traveled portion of the highway, struck numerous trees and ultimately rolled over, thereby causing the decedent's death.[3] The lessee of the vehicle was Rubbish Removal of Hartford, Inc. (Rubbish Removal), and the decedent was the guarantor of all amounts owed under the lease between Rubbish Removal and Mercedes-Benz Credit.[4]

Thereafter, Mercedes-Benz Credit filed a third party complaint against Rubbish Removal seeking indemnification for any judgment that may be rendered against Mercedes-Benz Credit in favor of Esposito or Specyalski, along with costs, expenses and attorney's fees for defending the actions brought by either Esposito or Specyalski. Mercedes-Benz Credit also filed a counterclaim against Esposito, based upon the decedent's guarantee, seeking indemnification for all claims, losses, injuries, costs, expenses and attorney's fees for any judgment that may be rendered against it in favor of either Esposito or Specyalski. Finally, Mercedes-Benz Credit filed a cross claim against Specyalski, seeking indemnification from her for any judgment that may be rendered against it, as well as for costs, expenses and attorney's fees for defending against Esposito's action.

Thereafter, pursuant to Practice Book § 17-44, Mercedes-Benz Credit separately moved for summary judgment on its third party complaint against Rubbish

[2] The lease identifies New Country Motors, Inc., as the lessor, but that entity subsequently assigned all right, title and interest in the lease to Mercedes-Benz Credit.

[3] Esposito claims that Mercedes-Benz Credit is liable for his damages by virtue of General Statutes § 14-154a, which provides: "Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator would have been liable if he had also been the owner."

[4] The lease for the automobile involved in the accident was signed by the decedent, on behalf of McCauley Enterprises, Inc., the predecessor to Rubbish Removal, as lessee, and individually, as guarantor of amounts owed under the lease.

Removal and on its counterclaim against Esposito based on the indemnification and guarantee provisions of the lease. See footnote 4 of this opinion. Specifically, Mercedes-Benz Credit claimed that it was entitled to judgment under the lease thereby obliging Rubbish Removal and Esposito to indemnify it for any judgment and all costs, including attorney's fees, resulting from the claims of Esposito and/or Specyalski. Rubbish Removal objected to the motion, arguing that the indemnification provision of the lease violates public policy under General Statutes § 14-154a because Rubbish Removal was not directly involved in the accident that caused the injuries for which that statute renders Mercedes-Benz Credit liable. See footnote 3 of this opinion. Similarly, Esposito argued that it would be against public policy for the decedent's estate to indemnify Mercedes-Benz Credit because the decedent was a nonnegligent passenger of the motor vehicle at the time of the accident. Additionally, both Esposito and Rubbish Removal argued that: the indemnification clause was unconscionable in that Mercedes-Benz Credit was insured for losses related to the motor vehicle and reimbursement would allow Mercedes-Benz Credit an improper double recovery; the language of the indemnification clause obligated Rubbish Removal and Esposito to pay only costs, expenses and attorney's fees *resulting from* claims made against Mercedes-Benz Credit, but not pay the claims or judgments themselves; and, because a genuine dispute of material fact existed as to the identity of the operator of the motor vehicle at the time of the accident, an issue important to the limitations of the indemnification clause in this case, Mercedes-Benz Credit's motion for summary judgment was inappropriate.

In deciding the motions, the trial court noted that "[t]he identity of the driver of the automobile is a fiercely contested issue," but nevertheless that court decided the motions irrespective of the decedent's liability. The court determined that the indemnification

clause in the lease entitled Mercedes-Benz Credit to judgment against Rubbish Removal and Esposito, as a matter of law, regardless of whether the decedent or Specyalski was operating the vehicle.

In granting Mercedes-Benz Credit's motion against Rubbish Removal, the trial court rejected the argument that the indemnification clause "limits the indemnification to 'costs' only, as that term is defined in Black's Law Dictionary . . . ." The court determined that the indemnification clause[5] was clear and unambiguous and that Rubbish Removal's liability to Mercedes-Benz Credit would not be limited to costs and expenses, but would include any damages awarded in a judgment on the claims themselves. The trial court also rejected Rubbish Removal's claim that it is against public policy to enforce an indemnification clause against a nonnegligent lessee such as itself because Rubbish Removal was a business entity that had "agreed to a particular allocation of the cost of the risk of accidents."

With regard to Esposito, the trial court made numerous determinations, all leading to the ultimate conclusion that the decedent's estate is bound by the provisions of the lease that the decedent had with Mercedes-Benz Credit. The court concluded that enforcement of the indemnification and guarantee[6] clauses of the lease would not constitute a violation of public policy and that adherence to the contract provision would not be unconscionable. Specifically, the trial

---

[5] The indemnification clause of the lease provides: "If [the lessor is] subjected to any claims, losses, injuries, expenses, or costs related to the use, maintenance, or condition of the vehicle, [the lessee] will pay all of [the lessor's] resulting costs and expenses, including attorneys' fees."

[6] The guarantee clause of the lease provides: "The Guarantor(s) named below absolutely and unconditionally guarantees payment of all amounts owed under this Lease. This means if the Lessee(s) fail(s) to pay any money owed, Guarantor(s) will pay it. All Guarantor(s) shall be jointly and severally liable and agree that this Guarant[ee] shall not be affected by any changes to this Lease. Guarantor(s) also agree to be liable for all fees and costs, including attorneys' fees, that the Lessor incurs in enforcing this Lease or Guarant[ee]."

court determined that, because an indemnification agreement is not against public policy when a lessee is the tortfeasor, and because a guarantor steps into the shoes of the lessee, if, in the present case, the decedent were found to have been the operator of the motor vehicle, his estate would be subject to the terms of the indemnification clause. If the decedent were found not to have been the operator, the trial court reasoned, his estate still would be bound by the indemnification clause if, as alleged in the special defense, he were found to have been negligent for having allowed Specyalski to operate the motor vehicle while she was intoxicated. Finally, if the decedent were not found to have been the operator, and if he were not found negligent for having allowed Specyalski to operate the motor vehicle, the trial court determined that the decedent, a sophisticated businessman, would nevertheless be bound by the lease, and would therefore be liable.[7] Therefore, the trial court entered an order in favor of Mercedes-Benz Credit on the issues of indemnity by the lessee, Rubbish Removal, and the guarantor, the decedent, and accordingly, rendered judgment for Mercedes-Benz Credit on its counterclaim against Esposito and on its third party claim against Rubbish Removal.

Thereafter, on January 6, 2003, Esposito and Rubbish Removal filed a petition for certification to appeal pursuant to General Statutes § 52-265a.[8] The petition was denied and, on January 13, 2003, Esposito and Rubbish

[7] Although the trial court did not phrase the issue in these terms, we view the issue decided as being more in the nature of a hypothetical inquiry because the issue of liability was in dispute and therefore unresolved.

[8] General Statutes § 52-265a provides in relevant part: "(a) . . . [A]ny party to an action who is aggrieved by an order or decision of the Superior Court in an action which involves a matter of substantial public interest and in which delay may work a substantial injustice, may appeal under this section from the order or decision to the Supreme Court within two weeks from the date of the issuance of the order or decision. . . .

"(b) The Chief Justice shall, within one week of receipt of the appeal, rule whether the issue involves a substantial public interest and whether delay may work a substantial injustice. . . ."

Removal filed an appeal pursuant to General Statutes § 52-263[9] with the Appellate Court. Additionally, pursuant to Practice Book § 61-4,[10] they filed a motion for permission to appeal with the Appellate Court and a motion for a § 61-4 determination with the trial court. On January 23, 2003, after the appeal was filed, the trial court found, pursuant to § 61-4 (a), that "the issues resolved by [the] judgment are of such significance to

[9] General Statutes § 52-263 provides in relevant part: "Upon the trial of all matters of fact in any cause or action in the Superior Court . . . if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial . . . he may appeal to the court having jurisdiction from the final judgment of the court or of such judge . . . ."

[10] Practice Book § 61-4 provides in relevant part: "(a) . . . This section applies to a trial court judgment that disposes of at least one cause of action where the judgment does not dispose of either of the following: (1) an entire complaint, counterclaim, or cross complaint, or (2) all the causes of action in a complaint, counterclaim or cross complaint brought by or against a party. If the order sought to be appealed does not meet these exact criteria, the trial court is without authority to make the determination necessary to the order's being immediately appealed.

"This section does not apply to a judgment that disposes of an entire complaint, counterclaim, or cross complaint (see Section 61-2); and it does not apply to a trial court judgment that partially disposes of a complaint, counterclaim, or cross complaint, if the order disposes of all the causes of action in that pleading brought by or against one or more parties (see Section 61-3).

"When the trial court renders a judgment to which this section applies, such judgment shall not ordinarily constitute an appealable final judgment. Such a judgment shall be considered an appealable final judgment *only if* the trial court makes a written determination that the issues resolved by the judgment are of such significance to the determination of the outcome of the case that the delay incident to the appeal would be justified, and the chief justice or chief judge of the court having appellate jurisdiction concurs. . . .

"(b) . . . If the trial court renders a judgment described in this section without making a written determination, any party may file a motion in the trial court for such a determination within the statutory appeal period, or, if there is no applicable statutory appeal period, within twenty days after notice of the partial judgment has been sent to counsel. . . . Papers opposing the motion may be filed within ten days after the filing of the motion. . . . The motion and any opposition papers shall be referred to the chief justice or chief judge to rule on the motion. If the chief justice or chief judge is unavailable or disqualified, the most senior justice or judge who is available and is not disqualified shall rule on the motion. . . ." (Emphasis in original.)

the determination of the outcome of the case that delay incident to an appeal would be justified . . . ." On July 10, 2003, Esposito, Rubbish Removal and Mercedes-Benz Credit thereafter, pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2, requested that the appeal be transferred to this court. On July 24, 2003, the Appellate Court ordered the parties to file supplemental briefs on the issue of whether the appeal should be dismissed for lack of a final judgment. On September 17, 2003, the Appellate Court marked the matter "off," and that same day issued a corrected order that determined that no action was necessary on the § 61-4 motion for permission to appeal. Thereafter, on September 30, 2003, we granted the motion to transfer the appeal to this court.

On appeal, Esposito and Rubbish Removal claim that the trial court improperly determined that: the indemnification clause in the lease imposing the duty to pay the indemnitee's costs and expenses also required them to pay Mercedes-Benz Credit for any judgment that might be rendered against it in the underlying action; the guarantee clause of the lease obligated Esposito to indemnify Mercedes-Benz Credit despite the fact that the clause is ambiguous; the enforcement of the indemnification and guarantee clauses against a nonnegligent lessee or guarantor does not violate the public policy embodied in § 14-154a; and the indemnification and guarantee clauses are not unconscionable. Mercedes-Benz Credit defends the trial court's decision on the merits. It also asserts that the issues regarding unconscionability are not reviewable.[11]

On the question of jurisdiction based on a concern that the appeal is not from a final judgment, Rubbish Removal, Esposito and Mercedes-Benz Credit all claim that the judgment of the trial court requiring indemnification of Mercedes-Benz Credit by Esposito and Rub-

---

[11] Specifically, Mercedes-Benz Credit claims that neither Rubbish Removal nor Esposito raised the issue of procedural unconscionability, nor did the trial court make a finding of substantive unconscionability.

bish Removal is a final judgment. Esposito and Rubbish Removal claim that this is an appeal pursuant to Practice Book § 61-2[12] because the trial court completely disposed of a counterclaim and a third party action. Although we do not know *what amount* Rubbish Removal and Esposito would be responsible for by virtue of the indemnification and guarantee clauses of the lease, they maintain that, according to *Walton* v. *New Hartford*, 223 Conn. 155, 162 n.9, 612 A.2d 1153 (1992), the determination of that amount does not deprive the court of jurisdiction. They also claim, in accordance with *Benvenuto* v. *Mahajan*, 245 Conn. 495, 501, 715 A.2d 743 (1998), that the issue of attorney's fees does not destroy the finality of the current judgment. Mercedes-Benz Credit contends that the judgment rendered in its favor by the trial court on the issue of indemnification is a final judgment because that order terminated a separate and distinct proceeding.[13]

We acknowledge that, because the trial court completely disposed of a counterclaim and a third party

---

[12] Practice Book § 61-2 provides: "When judgment has been rendered on an entire complaint, counterclaim or cross complaint, whether by judgment on the granting of a motion to strike pursuant to Section 10-44, by dismissal pursuant to Section 10-30, by summary judgment pursuant to Section 17-44, or otherwise, such judgment shall constitute a final judgment.

"If at the time a judgment referred to in this section is rendered, an undisposed complaint, counterclaim or cross complaint remains in the case, appeal from such a judgment may be deferred (unless the appellee objects as set forth in Section 61-5) until the entire case is concluded by the rendering of judgment on the last such outstanding complaint, counterclaim or cross complaint.

"If the judgment disposing of the complaint, counterclaim or cross complaint resolves all causes of action brought by or against a party who is not a party in any remaining complaint, counterclaim, or cross complaint, a notice of intent to appeal in accordance with the provisions of Section 61-5 must be filed in order to preserve the right to appeal such a judgment at the conclusion of the case."

[13] "We previously have determined that certain interlocutory orders have the attributes of a final judgment and consequently are appealable under § 52-263. [See footnote 9 of this opinion.] In *State* v. *Curcio*, [191 Conn. 27, 31, 463 A.2d 566 (1983)], we explicated two situations in which a party can appeal an otherwise interlocutory order: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or

action, at first blush, this case appears to be an appealable final judgment under § 61-2. Our resolution of this appeal, however, rests with the question of whether the decision of the trial court is ripe for adjudication. "In light of the rationale of the ripeness requirement, to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 144, 788 A.2d 1158 (2002); we must be satisfied that the case before the court does not present a hypothetical injury or a claim contingent upon some event that has not and indeed may never transpire." (Internal quotation marks omitted.) *Milford Power Co., LLC* v. *Alstom Power, Inc.*, 263 Conn. 616, 626, 822 A.2d 196 (2003). We conclude that this appeal does not satisfy such a requirement.

"We begin by setting forth the fundamental principles that guide our resolution of this appeal. Justiciability and ripeness have been referred to by our Appellate Court as related doctrines. See *American Premier Underwriters, Inc.* v. *National R. Passenger Corp.*, 47 Conn. App. 384, 390 n.12, 704 A.2d 243 (1997), cert. denied, 244 Conn. 901, 710 A.2d 174 (1998); *Cumberland Farms, Inc.* v. *Groton*, 46 Conn. App. 514, 517–18, 699 A.2d 310 (1997), rev'd on other grounds, 247 Conn. 196, 719 A.2d 465 (1998); *Mayer* v. *Biafore, Florek & O'Neill*, 45 Conn. App. 554, 556–57, 696 A.2d 1282 (1997), rev'd on other grounds, 245 Conn. 88, 713 A.2d 1267 (1998); *ASL Associates* v. *Zoning Commission*, 18 Conn. App. 542, 548–49, 559 A.2d 236 (1989). Although this court has not defined expressly the precise relationship between ripeness and justiciability, it is well settled in the federal courts that ripeness is one of several justiciability doctrines, including standing and mootness. See *United States* v. *Loy*, 237 F.3d 251, 260 (3d Cir. 2001) (all of

action so concludes the rights of the parties that further proceedings cannot affect them." (Internal quotation marks omitted.) *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, 249 Conn. 36, 46, 730 A.2d 51 (1999).

the justiciability doctrines—standing, ripeness, and mootness—stem in part from a desire to allow the other branches of government to engage in their normal process of lawmaking before invoking the judicial power to stop such efforts in their tracks); *Coalition for the Abolition of Marijuana Prohibition* v. *Atlanta*, 219 F.3d 1301, 1309 (11th Cir. 2000) ([t]hree strands of justiciability doctrine—standing, ripeness, and mootness—play an important role in the determination of whether the plaintiff-appellants' case against the [defendant] presents [a] . . . case or controversy under article three of the federal constitution . . . *United Transportation Union* v. *Foster*, 205 F.3d 851, 857 (5th Cir. 2000) (In an attempt to give meaning to [the] . . . case or controversy requirement [of article three of the federal constitution], the courts have developed a series of principles termed justiciability doctrines. One such doctrine . . . is ripeness.); *National Treasury Employees Union* v. *United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (courts have developed a series of principles termed justiciability doctrines, among which are standing, ripeness, mootness, and the political question doctrine); see also E. Chemerinsky, 'A Unified Approach to Justiciability,' 22 Conn. L. Rev. 677 (1990) (examining ripeness in context of federal courts and describing it as one of several justiciability doctrines, including standing, mootness and political question, which must be met in order for federal court to hear case). For purposes of this appeal, it suffices to state that we agree with the Appellate Court that ripeness is a sine qua non of justiciability . . . . *American Premier Underwriters, Inc.* v. *National R. Passenger Corp.*, supra, 390–91 n.12.

"An issue regarding justiciability, which must be resolved as a threshold matter because it implicates this court's subject matter jurisdiction; *Mayer* v. *Biafore, Florek & O'Neill*, supra, 245 Conn. 91; raises a question of law. When . . . the trial court draws conclusions of

law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . . *Rich-Taubman Associates* v. *Commissioner of Revenue Services*, 236 Conn. 613, 618, 674 A.2d 805 (1996). Jurisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . . A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy. . . . [O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case. . . . *Figueroa* v. *C & S Ball Bearing*, 237 Conn. 1, 4, 675 A.2d 845 (1996). If it becomes apparent to the court that such jurisdiction is lacking, the appeal must be dismissed. *State* v. *Anonymous*, 240 Conn. 708, 718, 694 A.2d 766 (1997)." (Internal quotation marks omitted.) *Milford Power Co., LLC* v. *Alstom Power, Inc.*, supra, 263 Conn. 623–25.

We conclude that the trial court's memorandum of decision on the motions for summary judgment essentially was advisory in nature because, as the trial court expressly noted, there has been no determination on the issue of the decedent's underlying liability. Esposito and Rubbish Removal contended at oral argument in this court that, because this case was decided on motions for summary judgment, the trial court necessarily found in accordance with the pleadings that the decedent was the passenger in the motor vehicle and that he was not otherwise negligent. In other words, they argue that the decedent could not have been negligent in order for the trial court to have rendered summary judgment. Although we acknowledge their reasonable interpretation of the judgment, in this case, the trial court specifically stated that it was *not* making

any determination in that regard. Rather, the court noted that it was rendering judgment *regardless* of whether the decedent had been operating the vehicle when the accident occurred or was otherwise negligent for having allowed Specyalski to have driven the vehicle. Therefore, the record contains no factual finding that the decedent was *not* the operator or otherwise negligent. This lack of a finding is detrimental to our jurisdiction. If the decedent had indeed been negligent, there would be no issue on appeal before this court as to whether Mercedes-Benz Credit legally could enforce the indemnification and guarantee clauses against a nonnegligent lessee and guarantor, whether enforcement of those provisions would be against public policy, or whether Mercedes-Benz Credit could hold Rubbish Removal or Esposito liable for the underlying judgment.[14]

---

[14] Specifically, Esposito and Rubbish Removal claim that the trial court improperly determined that: the indemnification clause imposing the duty to pay the costs and expenses of Mercedes-Benz Credit also requires them to pay Mercedes-Benz Credit for *any judgment that might be rendered against it in the underlying actions;* the enforcement of the indemnification and guarantee clauses *against a nonnegligent lessee or guarantor* does not violate the public policy embodied in § 14-154a; and the indemnification and guarantee clauses are not unconscionable especially when the costs are imposed against *"one who is not a tortfeasor."* (Emphasis added.) These contingent claims are not ripe for adjudication *until* the decedent is determined, if ever, not to have been negligent.

The claim by Esposito that the trial court improperly determined that the guarantee clause of the lease obligating him to indemnify Mercedes-Benz Credit for costs, expenses *and any underlying judgment,* despite that clause's ambiguity, also rests, in large part, on the same unresolved contingency. The only aspect of the claim that, *in isolation,* conceivably is ripe is the question of whether the guarantee clause obligates Esposito to indemnify Mercedes-Benz Credit for its costs and expenses. Because that facet of the claim is interdependent on and intertwined with his ambiguity claim that would require us to construe the guarantee clause in its entirety, considerations of judicial economy compel us not to engage in such piecemeal treatment of the issue. In short, the trial court's decision in the present case and the claims on appeal resulting therefrom are almost entirely contingent upon a future event happening, i.e., a finding of liability in one of the negligence actions. We note that, should there be an eventual determination that the decedent was not negligent, the issues raised in this appeal will then be ripe for review.

We are not compelled "to decide claims of right which are purely hypothetical or are not of consequence as guides to the present conduct of the parties. The second of the limitations upon the exercise of the power . . . provides that there must be an actual, bona fide and substantial question or issue in dispute, or a substantial uncertainty of legal relations which requires settlement." *Sigal* v. *Wise,* 114 Conn. 297, 302, 158 A. 891 (1932).

In deciding whether this appeal presents a justiciable claim, we make no determination regarding its merits. Rather, we consider only whether the matter in controversy is ready to be adjudicated by judicial power according to the aforestated well established principles. On the basis of the underlying principle behind the ripeness requirement, we must be confident that the court is not faced with a hypothetical injury or a claim dependent upon some event that has not and, in point of fact, may never occur. We conclude that this appeal does not satisfy such a requirement.

Finally, Rubbish Removal and Esposito argue that, if we were to conclude that the appeal was not properly before the court pursuant to Practice Book § 61-2, the Chief Justice should nevertheless act pursuant to Practice Book § 61-4 (a), which provides that, when "the trial court makes a written determination that the issues resolved by the judgment are of such significance to the determination of the outcome of the case that the delay incident to the appeal would be justified, and the chief justice or chief judge of the court having appellate jurisdiction concurs," such a judgment shall be considered an appealable final judgment. Justice Borden is not persuaded, having concluded that this case presents precisely the type of inquiry that is inherently speculative and therefore not ripe for appellate review.[15]

---

[15] Because Chief Justice Sullivan was disqualified from sitting on this case, Justice Borden, as the most senior associate justice who was not disqualified, made the determination.

The appeal is dismissed.

In this opinion the other justices concurred.