# RONALD T. FORCIER *v.* SUNNYDALE
# DEVELOPERS, LLC
# (AC 24305)

Flynn, Bishop and Mihalakos, Js.

Argued May 25—officially released September 7, 2004

*Houston Putnam Lowry,* for the appellant (plaintiff).

*Edward W. Gasser,* with whom, on the brief, was *Kirby G. Huget,* for the appellee (defendant).

### Opinion

FLYNN, J. In this breach of contract action, the plaintiff, Ronald T. Forcier, a real estate agent, appeals from the trial court's postjudgment denial of his motion for contempt. The plaintiff claims that the trial court acted improperly by (1) failing either to find the defendant, Sunnydale Developers, LLC, in contempt for violating the court's order or, alternatively, to order a direct transfer of title to certain building lots to the plaintiff, (2) excluding evidence that supported his contention that he had satisfied certain conditions precedent to exercising his option to purchase additional lots and (3) conditioning the sale of two lots on his discharge of the lis pendens that he had filed on two additional lots. We affirm the judgment of the trial court.

The following facts and procedural history, as reflected in the record, are relevant to this appeal. In 1999, the defendant entered into an exclusive listing agreement with the plaintiff pursuant to which the plaintiff was to list and sell all the lots in a particular development. The agreement granted the plaintiff an option to purchase two lots per year over a three year period at a price of $55,000 each, for a total of six lots, provided that certain conditions were met. There were no conditions imposed on the plaintiff's option to purchase the lots in the first year. However, before the plaintiff could purchase two additional lots in the second year, which began on May 3, 2002, and ended on May 2, 2003, he

was required, pursuant to the purchase agreement, to procure buyers for fifteen lots. Likewise, before the plaintiff could purchase two more lots in the third year, which began on May 3, 2003, and ended on May 2, 2004, the purchase agreement required him to have sold another fifteen lots during the second year.

The plaintiff sold the requisite number of lots to entitle him to exercise his options after the first year and thereby to purchase four lots. When the plaintiff attempted to exercise these options, the defendant refused to sell him the property. The plaintiff brought a breach of contract action against the defendant, seeking specific performance, among other remedies. After a trial to the court, the court rendered judgment by memorandum of decision on March 7, 2003, and rendered a corrected judgment on April 8, 2003. The defendant already had conveyed lot four to the plaintiff prior to the corrected judgment. Thus, the plaintiff was entitled to three lots pursuant to his option to purchase four lots in the first two years. In its corrected judgment, the court granted specific performance to the plaintiff regarding lots two, three and forty-four and ordered the defendant to sell each of these lots to the plaintiff for $55,000 each. The plaintiff recorded the court's judgment on the land records.

The defendant filed a motion to reargue and for reconsideration stating that the judgment did not take into account the plaintiff's prior purchase of lot eight. The court issued two orders subsequent to the April 8, 2003 corrected judgment, in which it noted that because of the conveyance of lot eight, only two unspecified lots had to be conveyed to the plaintiff at that juncture. The plaintiff nevertheless attempted to schedule closings for lots two, three and forty-four pursuant to the court's corrected judgment. When the defendant sought to add conditions to the sale, including the removal of the lis pendens from the land records, the plaintiff filed a

motion for contempt and sought an order requiring the transfer of title free and clear as to lots two, three and forty-four. The plaintiff later filed a supplemental version of that motion to include lot forty-seven.

On June 9, 2003, the court denied the plaintiff's motion for contempt relating to the refusal to transfer lots two, three, forty-four and forty-seven. This appeal, which concerns the plaintiff's option to purchase lots three and forty-seven, followed.[1]

I

The plaintiff first claims that the court improperly refused either to find the defendant in contempt for disobeying its order or to order a direct transfer to the plaintiff of title to lots three and forty-seven. Specifically, the plaintiff argues that because a court order must be obeyed until it is modified and because the defendant had not provided the court with an adequate explanation for disobeying the order, the court abused its discretion by refusing to hold the defendant in contempt. We disagree.

We begin by setting forth the standard of review. "A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in failing to find that the actions or inactions of the [party] were in contempt of a court order." (Internal quotation marks omitted.) *Behrns* v. *Behrns*, 80 Conn. App. 286, 289, 835 A.2d 68 (2003), cert. denied, 267 Conn. 914, 840 A.2d 1173 (2004).

"Civil contempt involves the wilful failure to comply with an applicable court order." *In re Daniel C.*, 63 Conn. App. 339, 369, 776 A.2d 487 (2001). "[A]lthough

[1] Although the plaintiff claimed relief as to lots two and forty-four as well, the defendant conveyed those lots to the plaintiff during the pendency of this appeal. Thus, the appeal as to lots two and forty-four has been rendered moot.

there may be circumstances in which an ambiguity in an order may preclude a finding of contempt, [w]hether it will preclude such a finding is ultimately within the trial court's discretion. It is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order." (Internal quotation marks omitted.) *Sablosky* v. *Sablosky*, 258 Conn. 713, 721, 784 A.2d 890 (2001).

In this case, the court's subsequent orders rendered the judgment ambiguous. The court's March 7, 2003 memorandum of decision ordered specific performance as to lots two, three and forty-four. Prior to the court's issuance of its corrected judgment, the defendant filed a motion for reargument claiming that because the plaintiff was entitled only to four lots and had already purchased lots four and eight, the plaintiff was entitled to purchase only two, and not three, additional lots from the defendant. In its corrected judgment, the court again ordered specific performance as to lots two, three and forty-four. The defendant then filed another motion to reargue and for reconsideration regarding the plaintiff's prior purchase of lot eight. The plaintiff filed an objection to the defendant's motion to reargue. The court issued an order on that motion, stating that "[h]aving previously purchased lot eight, the plaintiff is entitled to purchase two additional lots rather than three." Furthermore, at a hearing held on April 21, 2003, the court acknowledged the sale of lot eight to the plaintiff, and noted that "[t]his being almost May of 2003, four lots were to be sold. And if two have already been sold, that would only leave two and not three."

The same trial judge issued both the original and corrected memoranda of decision and the two postjudgment orders. Those two subsequent orders clouded the court's original judgment granting specific performance as to lots two, three and forty-four. The subsequent

orders reduced the number of lots on which the plaintiff was entitled to specific performance, but did not specify which two of the three lots named in the judgment were to be conveyed to the plaintiff. Because the order was not sufficiently clear and unambiguous so as to warrant a finding of contempt for failure to comply with the order, we find no abuse of discretion and conclude that it was within the court's discretion to refuse to hold the defendant in contempt or to transfer title to the plaintiff.

Furthermore, as to the plaintiff's claim regarding lot forty-seven, we conclude that the court could not have abused its discretion in failing to hold the defendant in contempt for failing to convey that lot to the plaintiff. The court never issued an order of specific performance as to lot forty-seven. Contempt constitutes wilful disobedience of a court's order. *In re Daniel C.*, supra, 63 Conn. App. 369. Because there was no court order as to lot forty-seven, there was no wilful disobedience of a court's order. We, therefore, affirm the court's decision not to hold the defendant in contempt for its failure to convey lot forty-seven to the plaintiff. There simply was no judgment as to lot forty-seven to enforce by a judgment of contempt. The plaintiff also argues that the court acted improperly when it failed to transfer title to lot forty-seven directly to him. Because the court did not order specific performance as to lot forty-seven, we reject this argument as well.

## II

The plaintiff next claims that the court violated his due process rights when it ruled at the contempt hearing that he could submit an excerpted transcript of the trial proceedings within forty-eight hours and subsequently issued its contempt decision before the transcript had been delivered to the court. We conclude that the plaintiff has provided an inadequate record in the present case and, therefore, decline to review this claim.

"The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . It is a fundamental rule of appellate procedure in the review of evidential rulings, whether resulting in the admission or exclusion of evidence, that an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him." (Internal quotation marks omitted.) *State* v. *Henry*, 76 Conn. App. 515, 542, 820 A.2d 1076, cert. denied, 264 Conn. 908, 826 A.2d 178 (2003).

The plaintiff has not provided this court with an adequate record to decide this claim. The plaintiff claims that his due process rights were violated because the court made its ruling without first considering the excerpted transcript from the trial regarding his argument that he had sold the lots necessary to exercise his option to purchase two lots in the third year. The plaintiff did not submit a copy of the transcript to this court. "It is well established that [i]t is the responsibility of the appellant to provide an adequate record for review as provided in [Practice Book §] 61-10." (Internal quotation marks omitted.) *Calo-Turner* v. *Turner*, 83 Conn. App. 53, 56, 847 A.2d 1085 (2004). Our rules of practice provide in relevant part that "the term 'record' . . . includes all trial court decisions, documents and exhibits necessary and appropriate for appellate review of any claimed impropriety." Practice Book § 61-10. We do not have an adequate record from which to determine whether the court abused its discretion or to determine whether the exclusion of the evidence was harmful. Therefore, we decline to review the plaintiff's claim.

III

The plaintiff's final claim is that the court improperly conditioned the sale of lots two and forty-four on his

removal of his lis pendens from lots three and forty-seven. We conclude that this claim is not ripe for review. The present case does not present a live controversy that can be resolved by relief that this court can grant.

It is well settled that "our courts may not render advisory opinions. . . . Such an opinion is one of advice and not of judgment as there are no parties whose rights are adjudicated, and it is not binding on anyone. . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . The general rule is that a case is justiciable if it is capable of resolution on the merits by judicial action. . . .

"The justiciability of a claim is related to its ripeness. The basic rationale [of the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . . The problem is best seen in a twofold aspect, requiring [the court] to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. . . . [W]e will decide a case only when it presents a live controversy which can be resolved by relief that is within the court's power to grant." (Citations omitted; internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Groton*, 46 Conn. App. 514, 517–18, 699 A.2d 310 (1997), rev'd on other grounds, 247 Conn. 196, 719 A.2d 465 (1998).

Our Supreme Court has stated that "[i]n deciding whether [an] appeal presents a justiciable claim, we

make no determination regarding its merits. Rather, we consider only whether the matter in controversy is ready to be adjudicated by judicial power according to the aforestated well established principles." *Esposito* v. *Specyalski*, 268 Conn. 336, 350, 844 A.2d 211 (2004).

An actual controversy does not exist in the present case due to the events that have occurred which preclude us from granting any practical relief. During the pendency of this appeal, the plaintiff acquired title to lots two and forty-four. Although the court appears to have conditioned the sale of lots two and forty-four on the plaintiff's removal of his lis pendens from lots three and forty-seven, the court noted that the plaintiff "may have a legal right to file a lis pendens on lots three and forty-seven with respect to the option that ripened on May 3, 2003." The plaintiff subsequently filed a separate action regarding lots three and forty-seven and currently has a lis pendens on those lots. Thus, the plaintiff has a lis pendens on lots three and forty-seven and has title to lots two and forty-four.

In light of the rationale of the ripeness doctrine, we cannot decide an issue on its merits if the "court is . . . faced with a hypothetical injury or a claim dependent upon some event that has not and, in point of fact, may never occur." Id. The plaintiff argues that, by ordering the removal of the lis pendens on lots three and forty-seven, the court burdened third parties and the plaintiff "with the risk of potential litigation involving [the] plaintiff's option rights." There was a risk imposed on third party buyers who would not have had notice of the pending litigation during the interval of time between the removal of the lis pendens and its subsequent reinstatement. Additionally, the plaintiff was subject to the risk that an attachment might have been placed on the lots during that interval of time. The plaintiff has not provided us with a record showing that any of these events have occurred. In addition,

because the plaintiff currently holds a lis pendens on the two lots, these events may never transpire. The existence of any injury or possible harm exists only hypothetically. Even if we were to determine that the court acted improperly by conditioning the sale of lots two and forty-four on the removal of the lis pendens on lots three and forty-seven, we conclude that there is no additional relief that can be granted to the plaintiff.

The judgment is affirmed.

In this opinion the other judges concurred.