## JOHN DOE ET AL. *v.* FRANK E. CARREIRO, SR.
### (AC 25350)

Lavery, C. J., and Gruendel and Peters, Js.*

* The listing of judges reflects their status on this court as of the date of oral argument.

Argued September 27, 2005—officially released April 4, 2006

*Averum J. Sprecher*, for the appellant (defendant).

*Stephen M. Reck*, for the appellees (plaintiffs).

*Opinion*

GRUENDEL, J. The defendant, Frank E. Carreiro, Sr., appeals from the judgment of the trial court, rendered

after a trial to the court, awarding the two minor plaintiffs, John Doe and Tom Doe,[1] damages for his sexual abuse of them and for intentional infliction of emotional distress. On appeal, the defendant claims that (1) the court improperly admitted the opinions of two expert witnesses, through their written reports and testimony, on the ultimate issue in the case and (2) the admissions were harmful error. We conclude that the court improperly permitted one expert witness to state her opinion concerning the credibility of John Doe, but that the error was harmless. We disagree with the defendant's remaining evidentiary claims and affirm the judgment of the trial court.

The plaintiffs brought a five count complaint alleging sexual assault, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence and violation of privacy. The defendant, who at the time of the trial was in prison in Arizona for a conviction unrelated to this case, did not attend the trial or offer any evidence.[2] The court found in favor of the plaintiffs on the counts of sexual assault and intentional infliction of emotional distress, and awarded John Doe $1860 in economic damages and $250,000 in noneconomic damages. In addition, the court awarded the estate of Tom Doe $50,000 in noneconomic damages.

The court found that "[t]he evidence supports the claims of the plaintiffs that they were sexually, physically and mentally abused by the defendant by being

---

[1] The plaintiff Tom Doe died prior to trial in an unrelated incident. Jane Doe, the boys' mother, was appointed executrix of the estate of Tom Doe and was substituted as a plaintiff at trial. The last names of the victims and their mother are omitted to protect the identity of the victims, in keeping with the spirit of General Statutes § 54-86e. See *State* v. *Iban C.*, 275 Conn. 624, 627 n.2, 881 A.2d 1005 (2005).

[2] The defendant has not challenged on appeal the court's decision to proceed with the trial in his absence.

forced to perform perverse sexual acts with him and with other children over a period of several years." In reaching that determination, the court made the following factual findings. John Doe first met the defendant when he was seven years old and stayed at his uncle's house. The defendant was his uncle's landlord and friend. John Doe and his half brother, Tom Doe, often would visit the uncle to play with the uncle's five children. The defendant often would baby-sit or visit with the uncle's children while John Doe and Tom Doe were visiting.

When John Doe was seven, the defendant began showing him, Tom Doe and some of the other children pornographic magazines in a trailer behind the uncle's house. The defendant told the children not to tell anyone about the magazines. Soon thereafter, the defendant instructed the children to walk around naked in his trailer and, on one occasion, sat with John Doe and touched the boy's penis. At other times, the defendant also instructed the children, including both John Doe and Tom Doe, to perform perverse sexual acts. The defendant told the children not to discuss what they were doing. The children continued to meet with the defendant until John Doe was eleven, when John Doe and Tom Doe also began having sexual contact with each other, apart from their sexual contact with the defendant. At that time, Tom Doe told his mother about the defendant's acts, and the mother reported her child's allegations to the police. This civil action was then filed.

The defendant claims that the court improperly admitted written reports from the plaintiffs' expert witnesses and permitted them to testify as to their opinions on the minor victims' credibility. The defendant argues that the court's rulings were incorrect in two respects. First, he argues that the court admitted written reports and expert testimony that buttressed the minor plain-

tiffs' claims that they were victims of abuse by the defendant. Second, he argues that the court permitted the expert witnesses to state their opinions about the boys' credibility.

Our standard of review of a trial court's evidentiary rulings is well established. The trial court has wide discretion in deciding the admissibility of evidence. *Catalano* v. *Falco*, 74 Conn. App. 86, 88, 812 A.2d 63 (2002). "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *Forcier* v. *Sunnydale Developers, LLC*, 84 Conn. App. 858, 864, 856 A.2d 416 (2004).[3]

"Expert witnesses cannot be permitted to invade the province of the [trier of fact] by testifying as to the credibility of a particular witness or the truthfulness of a particular witness' claims." *State* v. *Iban C.*, 275 Conn. 624, 634, 881 A.2d 1005 (2005). "[E]ven indirect assertions by an expert witness regarding the ultimate issue in a case can serve inappropriately to validate the truthfulness of a victim's testimony." Id., 635. "It is a fundamental rule of appellate procedure in the review of evidential rulings, whether resulting in the admission

---

[3] In addition to requesting that this court review his claims under the abuse of discretion standard of review, the defendant asks this court to review his claims pursuant to the plain error doctrine. See Practice Book § 60-5. "The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Smith*, 275 Conn. 205, 240, 881 A.2d 160 (2005). Because the defendant's claims here do not present the type of extraordinary situation that warrants plain error review, we decline to review them according to this standard.

or exclusion of evidence, that an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him." (Internal quotation marks omitted.) *Forcier* v. *Sunnydale Developers, LLC*, supra, 84 Conn. App. 864. The defendant has not met that burden.

## I

We first address the defendant's claim that the court improperly admitted the written reports of the two expert witnesses because they contained opinions concerning the ultimate issue in the case. The following additional facts and procedural history are relevant to the defendant's claim.

After John Doe and his mother had testified, the plaintiffs' counsel called Jessica Seiferman as an expert witness. Seiferman had been a coordinator for the Norwich Sexual Assault Crisis Service, and had counseled both John Doe and Tom Doe after they disclosed the defendant's sexual abuse of them. The defendant objected to Seiferman's testifying as an expert because, he asserted, she had not been disclosed as an expert witness as required by Practice Book 13-4 (4).[4] The plaintiffs' counsel responded that he gave notice to the defendant of Seiferman's testimony in his prior answers to interrogatories and requests for production, and offered into evidence as exhibit seven the interrogatory answers and appended office notes of Seiferman and of Rebecca Bowen, the plaintiffs' second expert witness. Bowen, who was head counselor at Northeast Clinical Specialists, LLC, had also counseled both minor plaintiffs after they disclosed the defendant's sexual abuse of them.

The defendant's counsel did not object to the admission of the interrogatories, but did object to the experts'

---

[4] The defendant has not challenged on appeal the court's decision to permit Seiferman to testify as an expert witness.

office notes. In his objection, he stated, "I'm going to object to anything but the interrogatories that Your Honor looked at and now has." The court overruled the objection, noting, "I think that's significant if you're complaining about lack of information [about the expert witnesses' disclosure]. The fact that he has additional information there, I think is significant, and it's appropriate that it be part of the exhibit." The court then admitted exhibit seven into evidence, which included the attached office notes of both Seiferman and Bowen.

Counsel's objection to the admission of exhibit seven was insufficient to preserve it properly for review. Our Supreme Court has stated: "[T]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted. . . .

"These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time to act. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Internal quotation marks omitted.) *State* v. *Cabral*, 275 Conn. 514, 530–31, 881 A.2d 247, cert. denied, 546 U.S. 1048, 126 S. Ct. 773, 163 L. Ed. 2d 600 (2005).

In making his objection to the·admission of exhibit seven, the defendant's counsel did not state any suffi-

cient basis for it and certainly did not state the claim that the defendant now makes on appeal, which is that the reports contained the experts' opinions on what he characterizes as the ultimate issue in the case.[5] We will not reverse a trial court's decision on the basis of an evidentiary ruling when the objection was not clearly made before the trial court. We therefore find that exhibit seven, containing the interrogatories and notes of both expert witnesses, was admitted into evidence properly.[6]

Following the admission of exhibit seven and subsequent testimony of Seiferman, the plaintiffs' counsel offered Seiferman's notes as exhibit six. The defen-

[5] On appeal, the defendant relies on *State* v. *Grenier*, 257 Conn. 797, 778 A.2d 159 (2001), in which our Supreme Court drew a "distinction between admissible expert testimony on general or typical behavior[al] patterns of minor victims and inadmissible testimony directly concerning the particular victim's credibility." (Internal quotation marks omitted.) Id., 806. We note that the defendant did not cite *Grenier* or any authority in any of his objections during trial and did not bring that case or any related case to the court's attention prior to the conclusion of evidence.

[6] The dissent questions whether the reports were actually admitted as part of exhibit seven. We have examined exhibit seven and conclude that the reports were part of it. Our conclusion is buttressed by the fact that some time after the reports were admitted, the defendant's counsel noticed that the court was reading them and objected. The colloquy was as follows:

"[The Defendant's Counsel]: Judge Hurley, may I interrupt a moment and be heard on one thing, if I may, Your Honor?

"The Court: Go ahead.

"[The Defendant's Counsel]: Your Honor, I believe—Your Honor is reviewing an exhibit, but I believe that the exhibit contains substantive material that will, to some extent, either come before Your Honor or be excluded based upon the admissibility of it, and I'm not by any means casting any aspersion, but I just wanted to mention it, Your Honor, that Your Honor may be reading material that is going to be excluded from evidence itself, but has substance—

"The Court: Counsel, please, don't direct the court how to conduct a case. That's an outrageous thing for counsel to say. I'm reviewing something that is a full exhibit corresponding to the testimony of the witness so that I can follow that witness' testimony."

There is nothing in the record that would suggest that the experts' reports were not part of exhibit seven.

dant's counsel objected, stating: "It has a substantial number of conclusions as to the ultimate issues in this case, and these written conclusions verify or tend to verify and validate the credibility of the person giving the information or the person about whom the information is given." The court overruled the objection.

The plaintiffs then called their second expert witness, Bowen, and requested that the court admit into evidence, as exhibit four, her written notes from interviews with the minor plaintiffs. The defendant's counsel objected to the admission, stating that "[the record] contains material that attempts to validate or tends to validate. It's full of conclusions . . . . It has conclusions and material in there that goes to the ultimate question for Your Honor." The court overruled the objection, and the record was admitted as exhibit four.

A review of the record reveals that Seiferman's and Bowen's office records, admitted as exhibits six and four, respectively, were exactly the same as the records admitted as part of exhibit seven. We thus find that exhibits four and six, regardless of the propriety of their admission, were merely cumulative of the properly admitted exhibit seven. "It is well recognized that any error in the admission of evidence does not require reversal of the resulting judgment if the improperly admitted evidence is merely cumulative of other validly admitted testimony." (Internal quotation marks omitted.) *Fink* v. *Golenbock*, 238 Conn. 183, 211, 680 A.2d 1243 (1996). The court therefore could properly weigh the evidence contained in the experts' reports in making its decision.

## II

We next address the defendant's claim that the court improperly permitted the plaintiffs to elicit from the two expert witnesses testimony that the minor plaintiffs were victims of abuse by the defendant. Specifically,

the defendant argues with respect to his claim that the experts improperly were permitted to testify as to their conclusions that the boys were victims of sexual abuse by the defendant, thus indirectly vouching for the boys' credibility and directly asserting opinions about the ultimate issue in the case in contravention of the holding of *State* v. *Grenier*, 257 Conn. 797, 806, 778 A.2d 159 (2001). We emphasize that our analysis does not diminish the holding of *Grenier*, which was that an expert witness' assertion regarding a victim's credibility, whether direct or indirect, constitutes impermissible testimony. Rather, in analyzing the facts of this particular case, we review the content of the experts' office notes contained in exhibit seven and the testimony of John Doe and his mother because this evidence was before the court properly prior to the testimony of both expert witnesses.

Bowen's records include notes of counseling sessions she had with John Doe and Tom Doe, both individually and together, beginning in June, 2002. The notes regarding John Doe reflect that, beginning in his first session, he provided detailed information about the sexual abuse he and his brother had experienced and identified the defendant as the abuser. The notes relate, in great detail, the sexual activity that the defendant caused the minor plaintiffs and other children to engage in, either with him or in his presence. They include a reference that, while waiting in a car for a court session, John Doe "saw [the defendant] walking by and saw [the] back of his head." Finally, they include the course of Bowen's treatment of John Doe.[7]. Bowen's records regarding Tom Doe include her report that he was seven

---

[7] Bowen's notes taken during sessions with John Doe and Tom Doe together state that the "boys used [the] time to discuss the similarities and differences regarding their sexual abuse by [the defendant]." The notes also state that Tom Doe reported details connected to his sexual abuse, and that he was still very angry about this abuse and did not feel supported at home.

or eight years old when the sexual abuse began, and that the defendant had threatened him with violence and performed oral sex on him.[8]

Seiferman's notes contained in exhibit seven relate only to Tom Doe. The notes are sparse because Seiferman did not "believe in putting a whole lot of things down." Prepared on a preprinted form headed "Intake-Rape Crisis Services," the notes list Tom Doe's correct name, and reflect that there was a child sexual assault and that it was committed by a friend or acquaintance known to the victim.

In sum, the contents of both experts' notes clearly portrayed John Doe and Tom Doe as victims of sexual abuse by the defendant. As discussed, the notes were admitted into evidence properly as exhibit seven. Further, the testimony of the experts was essentially a verification and review of their written notes.[9] Indeed, at certain points in their direct examinations, both Seiferman and Bowen read directly from the same notes that already had been properly offered into evidence. Because the direct examination of the two experts covered essentially the same material found in their notes, we need not review each specific objection in detail. The testimony of both experts was cumulative of other evidence properly before the court.

We also conclude that the court properly could consider the testimony of John Doe and his mother. At trial, John Doe testified that he and Tom Doe were counseled by Seiferman and Bowen as a result of the sexual abuse by the defendant. Specifically, during

---

[8] Bowen's notes taken during sessions with Tom Doe alone also state that he concurred with John Doe's report that the defendant had sexually abused John Doe and the other children, and added that the defendant had sexually abused him as well.

[9] In his brief, the defendant acknowledges that "the plaintiffs' attorney began his direct examination using Bowen's oral testimony to completely reiterate what she had written in her notes . . . ."

direct examination, John Doe was asked without objection, "[W]hat counselors did you see as a result of what [the defendant] did?" John Doe replied, "Rebecca Bowen and I went to Jessica. I can't remember her last name, but I went to her a few times." On cross-examination, John Doe was asked by the defendant's attorney to state who had told him that the sexual behavior he displayed toward his half brother was at least partially due to the abuse he suffered from the defendant. He replied that he had been told that by his counselors, in particular Bowen. Thus, Bowen's opinion that John Doe had displayed sexual behavior toward Tom Doe as a result of his abuse by the defendant was already before the court when Bowen stated that opinion on direct examination.

After John Doe testified, the plaintiffs' mother, Jane Doe, testified about the defendant's sexual abuse of her sons. During direct examination, Jane Doe was asked without objection, "Now, when did you first learn that [the defendant] was abusing your children?" She responded, "I believe it was in May, 2002." Jane Doe continued her testimony by discussing the sexual abuse that her sons had reported to her.

We conclude that the court properly admitted the testimony of John Doe and his mother, Jane Doe, on the issue of whether John Doe was sexually abused by the defendant. On direct examination, both John Doe and Jane Doe were asked questions, without objection, that implicated the defendant as the source of John Doe's sexual abuse. The court therefore properly could consider the inference and the testimony of John Doe and Jane Doe that the defendant had sexually abused John Doe and Tom Doe. Therefore, the challenged testimony by the expert witnesses was cumulative of evidence properly before the court.

## III

We next turn to the defendant's claim that the expert witnesses improperly were permitted to testify as to their opinions regarding the credibility of the two boys' reports to them that they had been sexually abused by the defendant.

Both this court and the Supreme Court have consistently held that no witness, expert or lay, may give testimony of the witness' opinion of the credibility of another person. "It is the trier of fact which determines the credibility of witnesses and the weight to be accorded their testimony." *State* v. *Carter,*196 Conn. 36, 45, 490 A.2d 1000 (1985). Our Supreme Court has repeatedly asserted that an expert may not testify regarding the credibility of a particular victim. See, e.g., *State* v. *Iban C.*, supra, 275 Conn. 635; *State* v. *Grenier*, supra, 257 Conn. 806; *State* v. *Ali*, 233 Conn. 403, 432, 660 A.2d 337 (1995); *State* v. *Borrelli*, 227 Conn. 153, 173–74, 629 A.2d 1105 (1993).

A claim that the court improperly admitted the testimony of an expert, however, is an "evidentiary impropriety [that is] not constitutional in nature . . . [and thus] the defendant bears the burden of demonstrating harm." *State* v. *Grenier*, supra, 257 Conn. 806–807.

"[B]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . The harmless error standard in a civil case is whether the improper ruling would likely affect the result." (Internal quotation marks omitted.) *Dockter* v. *Slowik*, 91 Conn. App. 448, 467–68, 881 A.2d 479, cert. denied, 276 Conn. 919, 888 A.2d 87 (2005). In this case, we determine that the defendant has not satisfied this standard.

As a preliminary matter, we note that there is no support in the record for the defendant's assertion that

the experts were asked specifically to state their opinions regarding the reports to them by both John Doe and Tom Doe that the defendant had sexually abused the boys. No such question was asked of either expert regarding Tom Doe, and neither expert opined that he had been truthful in his reports to her.

Regarding John Doe, however, Bowen was asked the following question: "Based on your training and experience, was it your impression that he was telling the truth?" Bowen answered, "Yes." The defendant had made clear his objection to the question. Because our rules of evidence do not permit any witness, lay or expert, to testify regarding another witness' credibility, it was improper for the court to admit her opinion into evidence.

We find, however, that the error was harmless in this case. In *State* v. *Grenier*, supra, 257 Conn. 797, the alleged victim was five years old at the time of the alleged sexual assault. There was no physical or medical evidence that she had been sexually abused, and she was unable to identify the defendant in court as her abuser. "[T]he state's case was not particularly strong." Id., 808. "The improper testimony . . . struck at the heart of the central—indeed, the only—issue in the case, namely, the relative credibility of [the alleged victim] and the defendant. Id. Those weaknesses are not present in this case.

John Doe testified at length on direct and cross-examination. He was fourteen years old at the time of trial. His testimony did not exhibit any confusion about what had been done to him and his half brother, and he clearly identified the defendant as his abuser. The court was able to assess his credibility for itself.[10] In addition,

[10] The dissent expresses concern that the trial court did not make a specific finding that John Doe was credible. The defendant has not challenged the trial court's finding, however, so that question is not properly before us.

the boys' mother testified about the abuse that they had suffered at the hands of the defendant. Her testimony was consistent with the testimony of her son, John Doe. The court was able to evaluate her credibility for itself, as well, and the testimony of John Doe in light of the testimony of his mother. Moreover, because the defendant did not testify at all, the relative credibility of the victim and defendant was not at issue. Finally, the court had before it the properly admitted reports and testimony of the two experts, which provided the court with a factual basis for its conclusions apart from the improperly admitted opinion testimony regarding John Doe's credibility. The plaintiffs' case was strong, and the one improper ruling does not require reversal of the judgment and a new trial.

We find additional support for our conclusion in this court's decision in *In re Noel M.*, 23 Conn. App. 410, 580 A.2d 996 (1990). In that case, as in this one, the court was the trier of fact and, therefore, had the task of determining the credibility of a neglected child. We note that in court trials, judges are expected, more so than jurors, to be capable of disregarding incompetent evidence. See *Ghiroli* v. *Ghiroli*, 184 Conn. 406, 408–409, 439 A.2d 1024 (1981).

In light of all these considerations, we find that the court's error in permitting one expert witness to testify as to her opinion of the credibility of one of the plaintiffs was harmless.

The judgment is affirmed.

In this opinion PETERS, J., concurred.

LAVERY, C. J., dissenting. Connecticut law draws a "critical distinction between admissible expert testimony on general or typical behavior[al] patterns of minor victims and inadmissible testimony directly con-

cerning the particular victim's credibility." (Internal quotation marks omitted.) *State* v. *Grenier*, 257 Conn. 797, 806, 778 A.2d 159 (2001). While the former is permissible, the latter is not. Because I believe that the trial court improperly permitted the experts in the present case to cross that line repeatedly, I respectfully dissent from the majority opinion.

Whether direct or indirect, an assertion regarding a victim's credibility by an expert witness constitutes impermissible testimony. Id. As the present case involves both types of assertions, I address each in turn.

In my view, the court first abused its discretion in permitting Rebecca Bowen, a licensed family therapist, to assert directly that the plaintiff John Doe was credible. During Bowen's testimony, the following colloquy occurred:

"[The Plaintiffs' Counsel]: [D]id you make a determination as to whether these statements of [John Doe] were credible?

"[The Witness]: I felt—

"[The Defendant's Counsel]: Objection. Objection, Your Honor. She can't testify to the credibility of a party or a witness. That is your sole province. She can't be asked a question as to the credibility of another party or witness.

"[The Plaintiffs' Counsel]: But that—that's part of her job, I'd say, Your Honor.

"The Court: What was your question?

"[The Plaintiffs' Counsel]: Did she determine if the statements of [John Doe] were credible?

"The Court: Well, I don't think you can ask, 'could she determine.' I think you might ask it another way.

"[The Plaintiffs' Counsel]: Did you take steps to determine the reliability of [John Doe's] statements? Did you use your training and experience to qualify the reliability of his statements?

"[The Defendant's Counsel]: Objection, same basis.

"The Court: All right, I think the question has to be, was her impression that he was telling the truth.

"[The Defendant's Counsel]: Same objection, judge.

"The Court: Sorry, you don't object to the court's questions.

"[The Defendant's Counsel]: With all due respect—

"The Court: Overruled.

"[The Plaintiffs' Counsel]: Based on your experience and your training, was it your impression that [John Doe] was telling the truth?

"[The Witness]: Yes.

"[The Defendant's Counsel]: And Your Honor, I—he rephrased your question, so I object to his—

"The Court: Overruled."

Bowen's testimony that it was her impression that John Doe was telling the truth is no different from the testimony of the expert witness in *Grenier* that the victim's statements were very credible. See *State* v. *Grenier*, supra, 257 Conn. 806. Both are direct assertions that validated the truthfulness of the victim's testimony and, hence, are improper. Accordingly, I would conclude that the court abused its discretion in admitting this evidence.

More plentiful but equally problematic are the indirect assertions as to the victim's credibility. Our Supreme Court has stated that "even indirect assertions by an expert witness regarding the ultimate issue in a

case can serve inappropriately to validate the truthfulness of a victim's testimony." *State* v. *Iban C.*, 275 Conn. 624, 635, 881 A.2d 1005 (2005). For example, in *Grenier*, the expert witness testified that her treatment of the victim was for "the trauma of the abuse that [the victim] experienced . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Grenier*, supra, 257 Conn. 806. The court stated: "[A]lthough [that] testimony was not a literal statement of [the expert's] belief in [the victim's] truthfulness, [it] had the same substantive import and could be perceived as a conclusive opinion that [the victim] had testified truthfully. Thus, the testimony . . . was improper and should have been stricken." (Internal quotation marks omitted.) Id.

The trial transcript is littered with such statements on the part of the plaintiffs' experts. Jessica Sieferman, a sexual assault crisis service coordinator, was the first witness to testify as an expert on the plaintiffs' behalf. During her testimony, Sieferman defined the term "sexual reactivity" as "when a child has been sexually abused, they will go on to have inappropriate sexual contact with other children." When the plaintiffs' counsel inquired whether that had occurred with John Doe, Sieferman answered, "[Y]es, it is." Counsel for the defendant, Frank E. Carreiro, Sr., immediately objected, and the court asked the plaintiffs' counsel to repeat the question. Sieferman was then asked whether the "touching of his brother" was sexual reactivity, to which she replied, "absolutely." Counsel for the defendant again objected on the grounds that the plaintiffs' counsel asked for an opinion on one of the ultimate questions and that it was not directed to behavioral characteristics in general, but rather to the credibility of this specific plaintiff. The court overruled the objection.

Sieferman was later asked about her counseling of the plaintiff Tom Doe. The plaintiffs' counsel inquired: "Okay. Now, as a result of the sexual assault, what kind of symptoms were," at which point the defendant

objected, stating that the question interposed the conclusion that a sexual assault had occurred. The objection was sustained, and the court suggested that counsel rephrase the question. The plaintiffs' counsel continued: "As a result of the conduct that [the defendant]—as a result of [the defendant's] conduct with [Tom Doe], what symptoms and behaviors was [he] exhibiting?" As Sieferman responded by detailing the victim's specific behaviors, the defendant again objected on the grounds that the form of the question was improper and that Sieferman's response did not apply to general behavior of victims, but rather referred directly to the specific behaviors of Tom Doe. In overruling the defendant's objection, the court stated, "I don't understand that at all." That confession is illuminating. Our Supreme Court recently explained that "we have found expert testimony stating that a victim's behavior was generally *consistent with* that of a victim of sexual or physical abuse to be admissible, and have distinguished such statements from expert testimony providing an opinion as to whether a particular victim had *in fact* suffered sexual abuse." (Emphasis in original.) *State* v. *Iban C.*, supra, 275 Conn. 635, citing *State* v. *Freeney*, 228 Conn. 582, 592–93, 637 A.2d 1088 (1994). Both the question by the plaintiffs' counsel and Sieferman's answer presuppose that the defendant had in fact committed the conduct alleged. As such, they were improper.

The second expert to testify on behalf of the plaintiffs was Bowen. Bowen testified, inter alia, that the feelings that John Doe experienced are common in children that have been sexually abused and stated that those feelings "related to the abuse by [the defendant]." Bowen also testified that John Doe's "inappropriate thoughts regarding his half brother and the inappropriate touching of [him] related to the assaults by [the defendant]." The defendant objected to each of these assertions and was overruled.

In discussing John Doe's aggressive behaviors, Bowen stated that he expressed "concerns, feelings of being out of control and helplessness, not knowing what was going on with regard to people knowing about the sexual abuse, worried that his friends at school would find out about the sexual abuse . . . ." The plaintiffs' counsel later inquired whether the inappropriate touching of his half brother stemmed from the alleged abuse of the defendant. Bowen answered: "It seems very likely since one of the things that he talked about in treatment was that he was having pictures, was the word he used, of touching his younger brother *after the incidents of abuse occurred."* (Emphasis added.) When asked whether the abuse had affected John Doe emotionally, Bowen replied, "Yes. It is my opinion that *the sexual abuse he suffered* affected him emotionally." (Emphasis added.) In each instance, the defendant objected and was overruled. Yet, the common denominator in each instance is the conclusion that the sexual abuse in fact occurred.[1]

---

[1] I disagree with the conclusion of the majority that the testimony of Bowen and Sieferman was merely cumulative in light of the admission of exhibit seven. At the outset of Sieferman's testimony, the defendant's counsel objected on the ground that she had not been disclosed as an expert. A discussion thus ensued as to whether the plaintiff had complied with Practice Book § 13-4. During that discussion, the plaintiffs' counsel provided the court with a document so that it could review the plaintiffs' interrogatory responses. Following that review, the court concluded that the plaintiffs had complied with Practice Book § 13-4 and informed the plaintiffs' counsel, "[y]ou may take this back." The plaintiffs' counsel replied, "Would you like it made part of the record, Your Honor?" and then stated, "I'll make it part of the record." The defendant's counsel objected, stating that he was "going to object to anything but the interrogatories . . . ." The court responded: "All right. I think you're right." After learning that the plaintiffs had provided the defendant with "all the counselor's notes," however, the court overruled the objection. Exhibit seven was then marked and admitted into evidence. Moments later, as Sieferman began her testimony, the following colloquy occurred:

"[The Defendant's Counsel]: Judge Hurley, may I interrupt a moment and be heard on one thing, if I may, Your Honor?

"The Court: Go ahead.

"[The Defendant's Counsel]: Your Honor, I believe—Your Honor is reviewing an exhibit, but I believe that the exhibit contains substantive material that will, to some extent, either come before Your Honor or be

The aforementioned testimony of Bowen and Sieferman addresses the ultimate issue in the case, which was whether the minor plaintiffs had been sexually

excluded based upon the admissibility of it, and I'm not by any means casting any aspersion, but I just wanted to mention it, Your Honor, that Your Honor may be reading material that is going to be excluded from evidence itself, but has substance—

"The Court: Counsel, please, don't direct the court how to conduct a case. That's an outrageous thing for counsel to say. I'm reviewing something that is a full exhibit corresponding to the testimony of the witness so that I can follow the witness' testimony. Don't tell me how to conduct my trial. Sit down. Your motion is denied.

"[The Defendant's Counsel]: But may I be heard one more moment, Your Honor? That was admitted as an exhibit not for discovery in this case.

"The Court: Uh-uh. It was admitted as a full exhibit. A full exhibit can be reviewed by the trier of fact.

"[The Defendant's Counsel]: But for purposes, Your Honor, of making a record for the denial of my motion on discovery, not for submitting it as evidence, substantive evidence—

"The Court: Counsel, you opened the door. It's a full exhibit. I can review it. Period. Sit down, please.

"[The Defendant's Counsel]: All right, Your Honor, but I—

"The Court: Proceed.

"[The Defendant's Counsel]:—just disagree that I opened the door to that.

"The Court: Well, you may disagree all you like. It's on the record. You've disagreed. You've made your objection."

The record thus reveals confusion as to whether exhibit seven was introduced as a full exhibit. Notably, the plaintiffs' counsel never explicitly asked the court to admit exhibit seven as a full exhibit, as he earlier had for a life expectancy table and later did for exhibits six and four. Furthermore, the index to the transcript of February 24, 2004, describes exhibit seven as "interrog document." Exhibits six and four are described as "Sieferman's notes" and "Bowen's notes," respectively.

That afternoon, counsel for the defendant objected time and time again to the testimony of the plaintiffs' experts, stating, inter alia, that "it is asking for an opinion on one of the ultimate questions at issue here"; "it is an opinion directed at a specific child as opposed to an opinion on general behavioral characteristics"; "it has a substantial number of conclusions that deal with conclusions as to the ultimate issues"; "she is referring to specific activities or behavior as opposed to general behavioral characteristics"; "it contains material that attempts to validate or tends to validate"; and "she can't testify to the credibility of a party or a witness, that is your sole province."

As the majority explains, the purpose of requiring counsel to state the basis of an objection is to allow the court the opportunity to act and to avoid trial by ambush. See part I A of the majority opinion. In the present case, however, the court plainly understood the basis of the defendant's counsel's objections. At one point, the defendant's counsel objected to a particular question asked of Bowen by stating: "Objection, Your Honor. May my same objections be incorporated or should I restate them?" The court

abused by the defendant. "[I]n cases in which an expert witness reaches a conclusion on the ultimate issue in part based upon statements made by the victim . . . the expert is necessarily making a determination about the victim's credibility." *State* v. *Iban C.*, supra, 275 Conn. 635–36. Accordingly, I would conclude that the court abused its discretion by admitting this improper evidence.[2]

That conclusion, however, does not end the inquiry. The remaining question is whether the admission of the

replied, "No, you don't have to, it was the same thing you objected to before. Right, same reason? All right. I make the same ruling." The defendant's counsel later objected by inquiring of the court, "Once again, if you want me to incorporate all of those objections to this or do you want me to restate them? I'll do it either way Your Honor wants, but it's going to be at least those same objections." The court agreed, stating, "All right. I'll overrule the objection." Later, the defendant's counsel stated, "Objection, Your Honor," to which the court simply responded, "All right. Same ruling." Again, at the end of Bowen's testimony, the defendant's counsel stated, "Objection, Your Honor. Same objection, same request." Clearly aware of the nature of the objection, the court replied, "Very well. Same ruling." The court's repeated willingness to waive the requirement that the defendant's counsel formally state the basis of his objection indicates that it was not subject to trial by ambush in the present case. Accordingly, I believe it is necessary to review in detail the defendant's specific claims regarding the testimony of Bowen and Sieferman.

Moreover, I note the similarity between our analysis here and that applied to claims of prosecutorial misconduct, which entails a consideration of whether misconduct occurred and, if so, whether the misconduct amounted to a deprivation of a fair trial. See *State* v. *Ceballos*, 266 Conn. 364, 381 n.29, 832 A.2d 14 (2003). The second prong of prosecutorial misconduct review is, essentially, a harmlessness analysis. Connecticut law requires a reviewing court engaged in that analysis to consider both the frequency and the severity of the improprieties. *State* v. *Stevenson*, 269 Conn. 563, 573, 849 A.2d 626 (2004). Even if the testimony of Bowen and Sieferman was similar to that contained in their respective notes, I would consider both the frequency and the severity of the indirect assertions as to the victim's credibility in evaluating the defendant's claim on appeal.

[2] At oral argument, the plaintiffs' counsel acknowledged that an expert is never permitted to testify as to the credibility of a witness. He also stated that "if the defendant in his posttrial brief had raised *State* v. *Grenier* [supra, 257 Conn. 797] and said, 'this testimony should be stricken,' then I would have agreed." His concessions are elucidating, for at trial, when the defendant objected to Bowen's testimony on the ground that "she can't testify to the credibility of a party or a witness," the plaintiffs' counsel responded, "But that—that's part of her job, I'd say, Your Honor."

improper testimony constituted harmful error. "[B]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . The harmless error standard in a civil case is whether the improper ruling would likely affect the result." (Internal quotation marks omitted.) *Urich* v. *Fish*, 261 Conn. 575, 580–81, 804 A.2d 795 (2002).

In *Grenier*, the court considered the following factors in conducting its harmlessness analysis. They were: (1) "[f]irst, and most important, the state's case rested entirely on [the victim's] credibility"; *State* v. *Grenier*, supra, 257 Conn. 807; (2) the state neither introduced physical or medical evidence of abuse nor presented any eyewitness testimony other than that of the victim; (3) the defendant testified and denied the allegations of abuse; (4) the improper expert testimony "struck at the heart of the central—indeed, the only—issue in the case, namely, the relative credibility of [the victim] and the defendant"; id., 808; (5) "the prejudice flowing from the improper testimony was compounded by the fact that both of the state's expert witnesses vouched for [the victim's] credibility"; id.; and (6) "inasmuch as [the victim's] version of the events provided the only evidence of the defendant's guilt, the state's case was not particularly strong." Id. The court therefore concluded that the substantial prejudice resulting from the inadmissible expert testimony entitled the defendant to a new trial. Id., 812.

Other than the fact that the defendant, who was incarcerated in Arizona at the time of trial, did not testify or refute the claim of abuse, the *Grenier* factors are all met in the present case. As the plaintiffs neither introduced physical or medical evidence of abuse, nor presented any eyewitness testimony other than that of John Doe, the case rested primarily on his credibility

and, thus, was not particularly strong.[3] Furthermore, the improper testimony concerned the central issue in the case and was magnified by the fact that it originated from both of the plaintiffs' expert witnesses. Finally, whereas *Grenier* involved but one indirect assertion as to the complainant's credibility, the experts in this case made numerous such assertions. I would therefore conclude that the defendant has satisfied his burden of demonstrating harm.

The majority emphasizes that *Grenier* involved a trial before a jury, while the present case was before the court. That distinction relates only to the harmfulness of the inadmissible evidence. Neither the plaintiffs nor the majority cite any authority indicating that a trial judge possesses extrasensory powers of escape from the prejudice of such evidence.[4] As our Supreme Court noted in *Barbieri* v. *Cadillac Construction Corp.*, 174 Conn. 445, 389 A.2d 1263 (1978), "[a]lthough it may be true that the decision at which the court arrived upon the merits of the case might have been unaffected by

[3] The only other witness in addition to John Doe and the two experts was Tom Doe's mother. She testified that her son told her that the defendant "put his mouth on [Tom Doe's] penis," showed the children dirty magazines and had them play truth or dare.

[4] *Ghiroli* v. *Ghiroli*, 184 Conn. 406, 439 A.2d 1024 (1981), is inapposite to the present case. *Ghiroli* involved a challenge to the submission of a real estate appraisal by the defendant at the conclusion of a full hearing on the merits before the trial court. In its memorandum of decision, the trial court stated that the appraisal "was not considered by [it]." (Internal quotation marks omitted.) Id., 408. As our Supreme Court noted, "[t]he trial court thus expressly recognized that it could not properly have based its judgment on an ex parte appraisal and declared that it had not done so." Id. Likening the situation to that in which a curative instruction is provided to a jury, the court stated that "[i]t would be anomalous . . . to hold that an experienced trial court judge cannot similarly disregard evidence that has not properly been admitted." Id., 408–409; cf. *State* v. *Grenier*, supra, 257 Conn. 809–12 (curative instruction inadequate to ameliorate substantial prejudice that necessarily resulted from inadmissible testimony of expert witnesses). Unlike in *Ghiroli*, the court in the present case neither conceded the impropriety of certain expert testimony nor expressly disregarded that testimony.

this improper finding, we cannot be certain of it. . . . A judge has not such control over his mental faculties that he can definitely determine whether or not inadmissible evidence he has heard will affect his mind in making his decision." (Citation omitted; internal quotation marks omitted.) Id., 451.

Finally, I am compelled to note an additional factor not discussed in *Grenier* but significant nonetheless. In their brief, the plaintiffs state that "[a]t the end of the day, the trial judge found [John Doe's] testimony to be credible." That is incorrect. A review of the court's memorandum of decision reveals no such finding.[5] Rather, the court expressly relied on Bowen's testimony and records. As the court stated: "Bowen, a licensed marriage and family therapist, testified that she saw John [Doe] several times. *She found* he was robbed of his childhood and suffered intense mental suffering and anguish. Her testimony and her detailed notes reflect that [his] entire sexual development is confused and [that] it has caused him to become an abuser himself. *She found that as a result of the abuse he suffered at the hand of the defendant*, John [Doe] is now insecure, depressed, severely anxious and completely sexually confused." (Emphasis added.)

Evaluating John Doe's credibility and determining whether child sexual abuse occurred was the task for the court as finder of fact, not Bowen and Sieferman as expert witnesses. See *State* v. *Iban C.*, supra, 275 Conn. 636–37. By not making the requisite factual findings, the court abdicated its responsibility. Faith alone that the trial judge properly distinguished and disregarded the inadmissible expert testimony is insufficient, in my mind, to overcome the prejudice to the defendant in this case. For that reason, I would reverse the judg-

---

[5] Cf. *In re Noel M.*, 23 Conn. App. 410, 417, 580 A.2d 996 (1990), in which "[t]he trial court found the child to be a most credible witness."

ment of the trial court and remand the case for a new trial.